REVISED APRIL 16, 2008
IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 10, 2008

Charles R. Fulbruge III
Clerk

No. 06-40894

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

CARLOS CONSTANTINO BONILLA

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas, Laredo
5:06-CR-10-ALL

Before JONES, Chief Judge, DAVIS and GARZA, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge.

Carlos Constantino Bonilla ("Bonilla") pleaded guilty to being unlawfully present in the United States after deportation, in violation of 8 U.S.C. § 1326. The district court sentenced Bonilla to serve forty-one months in prison, followed by a three-year term of supervised release. Bonilla contends that the district court erred in adjusting his base offense level upward based upon his prior conviction for attempted manslaughter under New York Penal Law § 125.15. Bonilla also challenges the presumption of reasonableness that attaches to a sentence within a properly calculated guidelines range; and he challenges the constitutionality of § 1326(b)'s treatment of prior felony and aggravated felony

convictions as sentencing factors. These latter two arguments are foreclosed by Supreme Court precedent.[1] Although the district court erred in applying the crime of violence enhancement, because it imposed a reasonable alternative non-guideline sentence, we affirm.

I

Bonilla pleaded guilty to his § 1326 offense of illegal reentry without the benefit of a plea agreement. The presentence investigation report ("PSR") calculated a base offense level of eight pursuant to U.S. SENTENCING GUIDELINES MANUAL ("USSG") § 2L1.2(a) (2005). The PSR recommended adding sixteen levels under USSG § 2L1.2(b)(1)(A)(ii) because Bonilla's New York conviction for attempted manslaughter qualified as a "crime of violence." The PSR then recommended subtracting three levels for acceptance of responsibility under USSG § 3E1.1(a) and (b). A total offense level of twenty-one, coupled with Bonilla's criminal history category of II, resulted in a recommended imprisonment range of forty-one to fifty-one months.

Bonilla lodged objections to the PSR. First, Bonilla objected to the sixteen-level enhancement on the ground that the government had not carried its burden of showing that his prior conviction for attempted manslaughter qualified as a crime of violence under § 2L1.2(b)(1)(A)(ii). The PSR reveals that the crime occurred while the defendant was homeless, and he became embroiled in a fight over mattress space; he struck the victim over the head with a cinder block causing his death. Bonilla's attempted manslaughter conviction arose from his 1998 violation of § 125.15. Section 125.15 provides that:

---

[1] Bonilla properly concedes that these two arguments are foreclosed, and he raises them only to preserve them for further review. Bonilla's challenge to our presumption of reasonableness that attaches to sentences within the proper guidelines' range is foreclosed by Rita v. United States, 127 S. Ct. 2456, 2462-63 (2007). Bonilla's challenge to the constitutionality of § 1326(b)'s treatment of prior felony and aggravated felony convictions is foreclosed by Almendarez-Torres v. United States, 523 U.S. 224, 235 (1998). We have held that the latter issue is "fully foreclosed from further debate." United States v. Pineda-Arrellano, 492 F.3d 624, 625 (5th Cir. 2007).

A person is guilty of manslaughter in the second degree when:

> 1. He recklessly causes the death of another person; or
>
> 2. He commits upon a female an abortional act which causes her death, unless such abortional act is justifiable pursuant to subdivision three of section 125.05; or[2]
>
> 3. He intentionally causes or aids another person to commit suicide.

N.Y. PENAL LAW § 125.15 (McKinney 2008). As proof of the conviction, the probation officer submitted the New York criminal information that originally charged Bonilla with committing second-degree manslaughter. There is no evidence that Bonilla was reindicted for the attempt charge. The probation officer also submitted the Certificate of Disposition ("COD"), which is a state record of the defendant's offense of conviction. The criminal information charged Bonilla with manslaughter in the second degree based on a violation of Section 125.15(1). However, the COD noted only that Bonilla pleaded guilty to attempted manslaughter in the second degree under § 125.15 without identifying the subsection under which Bonilla pleaded guilty. Bonilla contended that the COD did not establish the subdivision he violated and that the criminal

---

[2] The statute defines "abortional act" to mean, "an act committed upon or with respect to a female, whether by another person or by the female herself, whether she is pregnant or not, whether directly upon her body or by the administering, taking or prescription of drugs or in any other manner, with intent to cause a miscarriage of such female." N.Y. PENAL LAW § 125.05(2) (McKinney 2008). An abortional act is justifiable:

> when committed upon a female with her consent by a duly licensed physician acting (a) under a reasonable belief that such is necessary to preserve her life, or, (b) within twenty-four weeks from the commencement of her pregnancy. A pregnant female's commission of an abortional act upon herself is justifiable when she acts upon the advice of a duly licensed physician (1) that such act is necessary to preserve her life, or, (2) within twenty-four weeks from the commencement of her pregnancy. The submission by a female to an abortional act is justifiable when she believes that it is being committed by a duly licensed physician, acting under a reasonable belief that such act is necessary to preserve her life, or, within twenty-four weeks from the commencement of her pregnancy.

Id. at § 125.05(3).

information could not be used to establish that fact, as it did not charge the attempt crime to which Bonilla eventually pleaded. Because no particular subdivision could be identified, Bonilla argued that § 125.15 must be analyzed as a whole to determine whether it fits within the guidelines' definition as a crime of violence. He claimed that when analyzed as such, the statute did not fit within the generic, contemporary definition of manslaughter.

Bonilla raised further objections to the PSR that mirror his remaining arguments on appeal.[3] At sentencing, Bonilla reurged these objections but the district court overruled them. The district court found that Bonilla's violation of Section 125.15 qualified under the guidelines as an enumerated offense of manslaughter, and thus as a crime of violence. The court sentenced Bonilla to a non-guideline sentence of forty-one months in prison, followed by a three-year term of supervised release, and a $100 mandatory assessment. Bonilla timely filed a notice of appeal.

II

Bonilla's first objection is that the district court erred in applying the crime of violence enhancement to determine his guideline sentence. Determining whether a prior offense qualifies as a crime of violence requires interpretation and application of the sentencing guidelines. We review a district court's interpretation and application of the guidelines de novo. See United States v. Vargas-Duran, 356 F.3d 598, 602 (5th Cir. 2004) (en banc) (reviewing de novo a district court's application of USSG § 2L1.2).

The application notes of USSG § 2L1.2 define a "crime of violence" in two different ways. A crime of violence either "(1) has the use, attempted use, or threatened use of physical force against the person of another as an element of the offense, or (2) it qualifies as one of several specifically enumerated offenses

---

[3] See, supra, note 1.

[including manslaughter]." United States v. Murillo-Lopez, 444 F.3d 337, 339 (5th Cir. 2006) (citing USSG § 2L1.2 cmt. n. 1(B)(iii)). Attempts can trigger a crime of violence enhancement. See USSG § 2L1.2 cmt. n. 5 (stating that "[p]rior convictions of offenses counted under subsection (b)(1) include the offenses of aiding and abetting, conspiring, and attempting, to commit such offenses"). In this case, the government argues only that Bonilla's offense under § 125.15 qualifies as the enumerated offense of "manslaughter." See USSG § 2L1.2 cmt. n. 1 (B)(iii) (stating that "'[c]rime of violence means any of the following. . . manslaughter"). The parties dispute how specifically we can define the offense committed by Bonilla, as well as the documents we may use to make such a determination.

## A

The New York law at issue here provides three separate subsections, each of which independently constitutes manslaughter in the second degree. To determine which subpart formed the basis of Bonilla's conviction, we may examine, "the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." See United States v. Mungia-Portillo, 484 F.3d 813, 815 (5th Cir. 2007) (quoting Shepard v. United States, 544 U.S. 13, 16 (2005)).

Bonilla argues that the district court erred by relying on the COD and the original criminal information charging him with second degree manslaughter to establish that his prior conviction amounted to a crime of violence. Bonilla contends that the district court could not use either document to "pare down" the statute in order to establish the subsection to which Bonilla pleaded guilty. Finally, he argues that Section 125.15, when taken as a whole, does not fit the guidelines definition of manslaughter, and therefore that his crime of violence enhancement was improper. The Government responds by arguing that the

district court properly relied on the criminal information as well as the COD. These two documents, contends the Government, show that Bonilla's prior conviction qualifies as the enumerated offense of manslaughter.

Recent panel decisions of this court confirm Bonilla's position as to the criminal information. Because the criminal information charges a crime of which Bonilla was not convicted, it cannot be used to "pare down the statute of conviction to determine under which subsection [Bonilla] pleaded guilty." United States v. Neri-Hernandes, 504 F.3d 587, 590 (5th Cir. 2007); see United States v. Gonzalez-Ramirez, 477 F.3d 310, 315 (5th Cir. 2007) (reaching same conclusion when defendant pleaded guilty to attempted kidnapping but indictment charged only aggravated kidnapping); see also United States v. Turner, 349 F.3d 833, 836 (5th Cir. 2003) (holding that, in the context of USSG § 4B1.2, "a district court may not rely on a charging document without first establishing that the crime charged was the same crime for which the defendant was convicted"). Therefore, the district court could not consider the criminal information to establish that Bonilla's offense qualified as a crime of violence.[4]

As to the COD, we have recognized that New York Certificates of Disposition have "sufficient indicia of reliability" such that they can be used to establish the existence of a prior conviction. See Neri-Hernandes, 504 F.3d at 591-92 (distinguishing between establishing facts underlying prior conviction and existence of prior conviction). In Neri-Hernandes, the defendant argued that a COD did not provide sufficient evidence to establish a prior conviction for a

---

[4] The government relies on our decision in United States v. Martinez-Vega, 471 F.3d 559 (5th Cir. 2006) to argue otherwise, but this case is distinguishable. In Martinez-Vega, we held that a judgment entered against the defendant showed that he was convicted of "the lesser charge contained in the indictment. Id. at 563 (emphasis in original). Because the lesser charge was made clear from the judgment, and was found by the court as actually being charged in the original indictment, the appellant could not carry his "burden of demonstrating plain error." Id. In this case, we have a certificate of disposition that does not refer back to a lesser offense in the original indictment. And unlike Martinz-Vega, where we reviewed only for plain error, we exercise de novo review of the issue in this case. Further, extending Martinez-Vega to this situation would unnecessarily bring it into conflict with Neri-Hernandes and Gonzalez-Ramirez.

crime of violence. We disagreed and noted that the Certificate in Neri-Hernandes' case "details [his] guilty plea and sentence, and it specifies a subsection of the statute under which Neri was convicted." Id. at 591 (emphasis added). Because the COD established the subsection of conviction, the court was able to find that Neri-Hernandes committed a crime of violence. Id. Bonilla's COD does not provide the same specificity to aid us or the district court. The COD states only that Bonilla pleaded guilty to attempted manslaughter in the second degree under § 125.15. It establishes the fact of Bonilla's conviction under the statute, but it does not provide the specific subsection under which he was convicted.

B

Because the criminal information may not be considered, and the COD provides no aid as to which subsection Bonilla violated, we consider § 125.15 as a whole to determine whether Bonilla's conviction qualifies as a crime of violence under the guidelines enumerated offense of manslaughter. We determine the meaning of the guidelines' reference to manslaughter by using a "common sense approach" and looking to the "ordinary, contemporary, [and] common meaning" of the term. Murillio-Lopez, 444 F.3d at 339 (internal quotation marks and citation omitted). "To distill the plain, ordinary meaning, this court looks to sources such as the Model Penal Code, Professor LaFave's treatise and legal dictionaries." Mungia-Portillo, 484 F.3d at 816. "When the statute of conviction encompasses prohibited behavior that is not within the plain, ordinary meaning of the enumerated offense, the conviction is not a crime of violence as a matter of law." United States v. Fierro-Reyna, 466 F.3d 324, 327 (5th Cir. 2006) (internal citation and quotation marks omitted).

As noted above, § 125.15 provides three different subsections, the violation of each defined as second degree manslaughter under New York law. The first defines second-degree manslaughter as, "recklessly caus[ing] the death of

another person." The second notes that if one commits certain abortional acts that cause a female's death, then that person may be prosecuted for manslaughter in the second degree. The third subsection provides for a second-degree manslaughter charge against anyone who "intentionally causes or aids another person to commit suicide." The question before us then, is whether the New York statute encompasses behavior beyond that included in the plain, ordinary meaning of manslaughter.

Traditionally, manslaughter has been divided into two categories: voluntary and involuntary manslaughter. This is still the norm in most American jurisdictions. 2 WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 15.1 490 (2d ed. 2003). "Voluntary manslaughter in most jurisdictions consists of an intentional homicide committed under extenuating circumstances which mitigate, though they do not justify or excuse, the killing." Id. at § 15.2 491. (emphasis added). The Model Penal Code includes a similar definition. See MODEL PENAL CODE § 210.3(1)(b) (defining manslaughter as, inter alia, "a homicide which would otherwise be murder" but "is committed under the influence of extreme mental or emotional disturbance for which there is reasonable explanation or excuse"). At least subsections (1) and (2) of 125.15 encompass criminal acts involving a less culpable mens rea than intentional homicide and, therefore, criminalize conduct broader than the plain and ordinary definition of voluntary manslaughter.[5] Therefore, we turn our focus to involuntary manslaughter to determine whether New York's statute is at least as narrow as the generic, contemporary version of that offense. See United States v. Dominguez-Ochoa, 386 F.3d 639, 642 (5th Cir. 2004) (noting that Texas'

---

[5] Subsection (1) requires only a reckless mens rea, and subsection (2) requires, for an abortional act, the intent to cause a miscarriage. Neither of these subsections requires a homicidal intent to establish a violation. It is not as clear whether subsection (3) would fall into a contemporary, generic definition of voluntary manslaughter. See generally, LaFave, supra, § 15.6 (discussing the varied state approaches to criminalizing the aiding and assisting of suicide). However, the breadth of subsection (3) is not determinative in this case.

criminal negligent homicide statute must be analyzed in relation to involuntary manslaughter because voluntary manslaughter requires a "different level of intent").

As to involuntary manslaughter, the Model Penal Code provides that, "[c]riminal homicide constitutes manslaughter when. . . it is committed recklessly." MODEL PENAL CODE § 210.3(1)(a).[6] The Model Penal Code's recklessness standard requires "proof of conscious disregard of perceived homicidal risk." Dominguez-Ochoa, 386 F.3d at 645 (quoting MODEL PENAL CODE § 210.3 cmt. 4 at 53). We have recognized that the recklessness standard adopted in the Model Penal Code provides the minimal necessary mens rea for "generic contemporary manslaughter (including involuntary manslaughter)." Id. at 646; see also LAFAVE, supra, at § 15.4(a) 523 (noting that most of the comprehensive criminal codes follow the Model Penal Code on this matter). Therefore, § 125.15 will be broader than the plain ordinary definition of manslaughter)) and thus not a crime of violence under the guidelines)) if one of its subsections requires less than a reckless state of mind.

Section 125.15(1) encompasses all of the conduct contemplated by the Model Penal Code's reference to manslaughter as reckless homicide. Specifically, it provides that "a person is guilty of manslaughter in the second degree if. . . he recklessly causes the death of another person." N.Y. PENAL LAW § 125.05(1) (McKinney 2008) The inclusion of subsections (2) and (3) indicates that the statute was intended to criminalize a broader swath of conduct than just recklessly caused deaths. Further, subsection (2) indicates that it can be violated by unjustified abortional acts that result in the death of a female. To constitute an "abortional act," the act must be taken "with intent to cause a

---

[6] The Model Penal Code defines "criminal homicide" as "purposely, knowingly, recklessly, or negligently caus[ing] the death of another human being." In other words, "[c]riminal homicide is murder, manslaughter, or negligent homicide." MODEL PENAL CODE § 210.1.

miscarriage." N.Y. PENAL LAW § 125.05(2) (McKinney 2008). However, the statute says nothing in terms of the defendant's mental state towards the risk of death created by his behavior. New York law provides that "if an offense or some material element thereof does not require a culpable mental state on the part of the actor, such offense is one of strict liability." N.Y. PENAL LAW § 15.10 (McKinney 2008). This suggests that if an act intended to cause a miscarriage results in a female's death, a defendant could be prosecuted under subsection (2) irrespective of the defendant's mental state towards the risk of death posed by his behavior. Therefore, subsection (2) makes § 125.15 broader than the generic, contemporary meaning of involuntary manslaughter. See Dominguez-Ochoa, 386 F.3d at 646 (finding that the lower mens rea requirement of Texas' criminal negligence statute prevented it from falling within the generic, contemporary definition of involuntary manslaughter which requires at least recklessness).

The government argues that there is no possibility that Bonilla was convicted under subsection (2) because nothing in the record indicates that he committed an abortional act on a female victim. This argument, however, misses the broader point that there is no evidence indicating which of the three subsections applies. Further, the government bears the burden of establishing a factual predicate justifying the adjustment, here that Bonilla's offense constitutes a crime of violence. See United States v. Rabanal, 508 F.3d 741, 743 (5th Cir. 2007) ("The general rule is that the party seeking an adjustment in the sentence level must establish the factual predicate justifying the adjustment." (internal quotation marks omitted)). Had the government produced useable evidence indicating that Bonilla was convicted under subsection (1), then his conviction certainly would qualify under the contemporary, generic definition of involuntary manslaughter. However, the government cannot rely on a lack of evidence to foreclose the possibility that Bonilla's conviction fell under another subsection.

For the foregoing reasons, we find that New York Penal Law § 125.15 criminalizes a broader range of conduct than that encompassed by the generic, contemporary offense of manslaughter. Subsections (2) and (3) encompass a broader scope of criminal behavior than the generic offense of voluntary manslaughter, as they cannot be said to require an intentional homicide. And subsection (2) can be violated without the recklessness towards a homicidal risk required under the generic, contemporary version of involuntary manslaughter. Therefore, the district court erred in applying the sixteen-level crime of violence enhancement when calculating Bonilla's sentence. See Fierro-Reyna, 466 F.3d at 329 (5th Cir. 2006).

III

Bonilla argues that as a result of the district court's error in applying the sixteen-level crime of violence enhancement, this court should vacate Bonilla's sentence and remand for resentencing. For the following reasons, we disagree.

The Supreme Court recently reaffirmed that prior to reviewing a sentence under the abuse-of-discretion standard, we:

> must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence))including a deviation from the Guidelines range.

Gall v. United States, 128 S. Ct. 586, 597 (2007). This presents no change to the law. United States v. Tzep-Mejia, 461 F.3d 522, 525-26 (5th Cir. 2006) (noting that before the district court imposes a non-Guideline sentence it must first properly calculate the applicable Guideline range); United States v. Smith, 440 F.3d 704, 707 (5th Cir. 2006) (holding that when a district court imposes a non-guidelines sentence, it should provide "fact-specific" reasons "consistent with the sentencing factors enumerated in section 3553(a)").

Not all errors in determining a defendant's guideline sentence require reversal.

> If the district court makes an error in an application of the Guidelines, we vacate the resulting sentence without reaching the sentence's ultimate reasonableness. United States v. Duhon, 440 F.3d 711, 716 (5th Cir. 2006), (citing United States v. Villegas, 404 F.3d 355, 362 (5th Cir. 2005)). . . . If, however, the district court imposes a non-Guideline sentence and that advisory sentence did not directly "result" from any Guideline error, it need not be vacated. Duhon, 440 F.3d at 716.

Tzep-Mejia, 461 F.3d at 526. In Tzep-Mejia, we held that the district court properly exercised its discretion in imposing a non-guideline sentence. The district court considered the possible guideline ranges that might apply to the defendant with and without a disputed enhancement for a crime of violence under U.S.S.G. § 2L1.2(b)(1)(A). After rejecting both ranges as alternatively too high and too low, the district court properly applied the individualized, case-specific factors as required by § 3553(a) and sentenced the defendant to a prison term between the two. Accordingly, Tzep-Mejia's sentence did not "result" from an incorrect application of the guidelines.

We find that the district court followed a similar process in this case and the resulting non-guideline sentence did not result from the district court's error in applying the crime of violence enhancement. The only aspect of Bonilla's guideline calculation that was in dispute was the crime of violence enhancement discussed previously. Neither party disagrees with the district court's guideline calculation before the enhancement. The district court erroneously concluded that the enhancement should apply to the defendant. However, like the district court in Tzep-Mejia, the court in this case imposed an alternative non-guideline sentence stating, "I believe that I have calculated the guidelines correctly, but even if I am wrong about the guidelines, this is the sentence that I would impose

in any event." Although the district court did not comment on the guideline ranges that would apply with and without the enhancement, the record reflects no disagreement between the parties or confusion by the district court about the guidelines range before and after the enhancement. The defendant argued in his objections to the PSR that without the enhancement "he should be scored at Level 6, at a Category I, with a sentencing range of 0-6 months, at Zone A." At sentencing the district court specifically referenced his consideration of the parties' arguments made at sentencing and in the reports before exercising its discretion to impose a sentence of 41 months. As in Tzep-Mejia, Bonilla's sentence did not result from an incorrect application of the guidelines.

Bonilla argues that the district court committed an additional procedural error by failing to adequately explain the chosen sentence. Gall, 128 S.Ct at 597. There is some dispute as to whether plain error review should apply to this issue because Bonilla did not object to the adequacy of the district court's reasons at sentencing. We need not decide the appropriate level of review, because as explained below, the district court's reasons were sufficient under any standard.

Prior to Rita, this court held that if a district court imposes a sentence within the properly determined Guidelines range, little explanation is required. See United States v. Mares, 402 F.3d 511, 519 (5th Cir. 2005). In Rita, the Court indicated that more than a brief statement may be required when a district court is presented with nonfrivolous arguments for a sentence outside the Guidelines. 127 S. Ct. at 2468-69. Nevertheless, the Court concluded that the district court's reasons for rejecting the defendant's § 3553(a) arguments for a non-Guidelines sentence in that case were, although brief, legally sufficient. Id. at 2469. Specifically, the Court noted that the record made clear that the judge listened to and considered the arguments and evidence but simply found the circumstances insufficient to warrant a sentence below the Guidelines range. Id. The judge said that the range was not "inappropriate" and that a sentence

at the bottom of the range was "appropriate." Id. The Court acknowledged that the judge might have said more, but was not required to do so. Id.

Error does not necessarily result when the district court 's reasons, as in this case, are not clearly listed for our review. As stated in Rita,

> The statute does call for the judge to "state" his "reasons." And that requirement reflects sound judicial practice. Judicial decisions are reasoned decisions. Confidence in a judge's use of reason underlies the public's trust in the judicial institution. A public statement of those reasons helps provide the public with the assurance that creates that trust.
>
> That said, we cannot read the statute (or our precedent) as insisting upon a full opinion in every case. The appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon circumstances. Sometimes a judicial opinion responds to every argument; sometimes it does not; sometimes a judge simply writes the word "granted," or "denied" on the face of a motion <u>while relying upon context and the parties' prior arguments to make the reasons clear</u>. The law leaves much, in this respect, to the judge's own professional judgment

Id. (underlining added.) In this case, examining the district court's statement at sentencing in the context of the full sentencing hearing confirms that the court's reasons for the non-guideline sentence it imposed were minimally sufficient.

Immediately before imposing sentence, the district court made the following statement:

> Okay. Mr. Bonilla, the court has considered the arguments made earlier and as well as the information in the report. And keeping in mind the factors that the court has to consider in imposing a sentence, the court is going to impose a sentence that it believes to be reasonable. And the sentence that the court imposes is one that the court believes to be reasonable. And that is true whether or not the court turns out to be wrong about the enhancement.

Because of the district court's reference to "arguments made earlier" and

14

"information in the report" we must look at the entire sentencing record to determine if those sources provide adequate information about the "factors that the court" considered in imposing sentence to determine whether the district court's reasons were adequate.

The "arguments made earlier" in the sentencing hearing include the government's argument that the court consider under its discretionary powers the type of crime the defendant committed that resulted in the conviction for attempted manslaughter. The government pointed out that the victim died as a result of what the defendant did - "And the victim was killed with a brick, Your Honor." The arguments also included the defendant's arguments for a non-guideline sentence on the basis of the history and characteristics of the defendant. 18 U.S.C. § 3553(a)(1). The defense argued that Bonilla was sixty years old, was in this country for several years with no confrontations with the law, and has several children living in the United States. Bonilla concluded by asking the court to impose a sentence "that is reasonable and that is fair." The government asked for a sentence in the low end of the guideline range, including the enhancement as the appropriate punishment given the defendant's past history and personal characteristics. The government noted the defendant's sporadic work and employment history, his problems with alcohol and homelessness. He also noted that the defendant had several arrests related to alcoholism and homelessness that were not prosecuted, a reference to the defendant's criminal history that the court could take into account when determining the appropriate sentence within the advisory guideline range.

The "reports" referenced by the district court contained an argument by the defendant for a sentence that is sufficient but not greater than necessary based on his arguments under § 3553(a) in Defendant's Objections to Presentence Report. The objections noted that the defendant entered the country to seek work and visit his children, not to commit further crimes. The

"reports" also include the probation office's recommendation for a sentence of 41 months.

The district court's reference to these arguments before imposing a non-guideline sentence of 41 months provide the background to clarify the "factors" considered by the district court in determining the chosen sentence and provide adequate reasons for that decision. Clearly the factors the court considered were those argued at sentencing and in previously filed reports - the nature of the circumstances of the offense and the defendant's history and characteristics, including his unprosecuted criminal history. 18 U.S.C. § 3553(a)(1). After considering these factors, the district court concluded that a sentence of 41 months was reasonable. "The sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case," Gall, 128 S. Ct. at 597. Examining the full sentencing record reveals the district court's reasons for the chosen sentence and allows for effective review by this court. Our task would have been easier had the district court stated its reasons explicitly on the record, a procedure we strongly recommend. A clear statement of reasons on the record also serves to prevent the inefficiency that would result from remand and resentencing if on appeal we had been unable to determine the court's reasons from the record. In this case however, our review makes clear both the reasons for the sentence and their adequacy as a matter of law.

## IV

The district court erred in applying a sixteen-level crime-of-violence enhancement based on Bonilla's conviction for attempted manslaughter under New York Penal Law § 125.15. However, because the district court imposed an alternative non-guideline sentence, the advisory sentence did not result from the guideline error and we need not vacate the sentence on that basis. Based on our examination of the sentencing record, the district court's reasons for the sentence under the § 3553(a) factors are adequate. Accordingly, we AFFIRM

Bonilla's sentence.

AFFIRMED.

EMILIO M. GARZA, Circuit Judge, dissenting:

The panel majority, like the district court, ignores the obvious dictates of Gall: there can be no properly calculated Guidelines range when the district court errs in applying a 16-level crime-of-violence enhancement. Moreover, the majority seems to condone the district court's statement: "I believe that I have calculated the guidelines correctly, but even if I am wrong about the guidelines, this is the sentence that I would impose in any event." This statement flies in the face of Gall, which states that a properly calculated guidelines range is a prerequisite to a reasonable sentence.

In Gall v. United States, 128 S. Ct. 586 (2007), the Supreme Court articulated that appellate review of sentences post-Booker involves a bifurcated process. Prior to reviewing a sentence for reasonableness under an abuse-of-discretion standard, we:

> must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence)) including a deviation from the Guidelines range.

Gall, 128 S. Ct. at 597; see United States v. Cisneros-Gutierrez, No. )) F.3d

)), 2008 WL 383024 (5th Cir. Feb. 13, 2008) (recognizing that Gall bifurcates the process for reviewing a sentence). Implied in the majority opinion is a viewpoint that Gall relaxed our appellate review of district court sentencing. I agree to an extent. See Gall, 128 S. Ct. at 600 (noting that the appellate court "failed to demonstrate the requisite deference to the District Judge's decision"). However, this relaxation applies to our review of a sentence's reasonableness. Gall makes clear that we must first determine whether district courts have complied with certain procedural requirements before sentences can be tested for reasonableness. See Gall, 128 S. Ct. at 597 ("Assuming that the district court's sentencing decision is procedurally sound, the appellate court should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard.").

Although (perhaps the proper word is "because") I agree with the majority's conclusion that the district court erred in treating Bonilla's New York conviction as a crime of violence, by affirming the district court's sentence in this case, the majority effectively ignores Gall's procedural requirements and commits three distinct errors in the process. First, the majority errs by imputing two Guidelines range calculations to the district court: one including the erroneous crime-of-violence enhancement and one without the enhancement. But the district court failed to calculate an alternative Guidelines range without the enhancement, and therefore the

19

majority has no basis for finding that the district court properly calculated the Guidelines range before imposing a non-Guidelines sentence. Second, given the record in this case, the majority mistakenly concludes that the district court imposed a non-Guidelines sentence. The district court's statement that it would impose the same sentence "whether or not the court turns out to be wrong about the enhancement," is insufficient to trigger a Rita/Gall reasonableness review of Bonilla's sentence as a non-Guidelines sentence. Finally, even assuming we could review the sentence as a non-Guidelines sentence, the district court failed to "adequately explain the chosen sentence" in light of the factors set forth in § 3553(a). Gall 128 S. Ct. at 597. For these reasons, I respectfully dissent.

Relying on United States v. Tzep-Mejia, 461 F.3d 522 (5th Cir. 2006), the majority concludes that we need not vacate Bonilla's sentence because it did not result from an incorrect application of the sentencing guidelines. See id. at 525-26 (noting that Booker did not excise 18 U.S.C. § 3742(f)). However, the majority does not confront the stark differences between this case and Tzep-Mejia. In Tzep-Mejia, the district court carefully calculated two potentially applicable Guidelines' ranges and then provided fact-specific reasons for applying a non-Guidelines sentence between those two ranges. See Tzep-Mejia, 461 F.3d at 526-27. Unlike Tzep-Mejia, the district court here did not state the multiple Guidelines ranges that it considered.

Presumably, the alternative Guidelines range would be the applicable Guidelines range without the crime-of-violence enhancement. Without the enhancement, the Guidelines range is 4 to 10 months' imprisonment, which results from Bonilla's base offense level of 8, coupled with his criminal history category of II. See U.S. SENTENCING GUIDELINES MANUAL ("USSG") § 2L1.2(a) (2005). Taking into account the three-level reduction for Bonilla's acceptance of responsibility, the proper range would be 0 to 6 months. See USSG Ch. 5. Pt. A, Sentencing Table. However, the district court never adopted an alternative Guidelines range. And the district court never indicated that it was considering both a Guidelines sentence of 41 months based on the crime-of-violence enhancement, and a non-Guidelines sentence of 41 months based on an upward variance of 35 to 41 months from an alternative Guidelines range of 0 to 6 months that did not include the enhancement. Significantly, the panel majority's opinion does not explicitly deny that a crime-of-violence enhancement under USSG § 2L1.2 is essential to a properly calculated Guidelines range.

To avoid the erroneous enhancement, the majority attributes to the district court an alternative, properly calculated Guidelines range that did not include the enhancement. But as noted above, the district court never articulated any Guidelines range aside from the range including the enhancement. By recognizing a properly calculated alternative Guidelines

21

range in this case, the majority implicitly approves of a procedure whereby an appellate court can ignore an erroneous crime-of-violence enhancement to create a proper Guidelines range calculation, even when the district court has not done the same. When the district court does not provide a separate Guidelines calculation, we cannot ignore an erroneous crime-of-violence enhancement, as it is an essential component of the Guidelines calculation under USSG § 2L1.2. The application instructions charge courts to "[d]etermine the base offense level and apply any appropriate specific offense characteristics, cross references, and special instructions contained in the particular guideline." USSG § 1B1.1(b). The crime-of-violence enhancement is a "specific offense" characteristic under § 2L1.2. See USSG § 2L1.2(b) (providing for the crime-of-violence enhancement as a "specific offense characteristic" applied to the base offense level of 8). Clearly, the Supreme Court had more in mind, when it set out the requirement that district courts properly calculate the Guidelines range, than simply requiring district courts to locate the initial base offense level for the crime. See Gall, 128 S.Ct. at 597. Without a clear indication that the district court considered multiple Guidelines ranges, as we had in Tzep-Mejia, we cannot separate an erroneous crime-of-violence enhancement from the initial base offense level in evaluating the district court's Guidelines calculation. Therefore, the district court erred in calculating Bonilla's Guidelines range.

Although the district court stated that it would have imposed the same sentence regardless of the Guidelines calculation, the district court's actions strongly indicate that it sought to impose a Guidelines sentence relying on the crime-of-violence enhancement. During the sentencing hearing, the district court overruled Bonilla's objection to the crime-of-violence enhancement, stating that "the court does find that the enhancement is warranted." The judge also stated that "I believe I have calculated the guidelines correctly," and that the sentence imposed "does happen to be a sentence within the guideline range." The district court's written statement of reasons for the judgment adopted the PSR without change. The PSR indicated that the 16-level enhancement was proper and that the resulting Guidelines range was 41-51 months. The PSR did not provide reasons for considering any other Guidelines range or a non-Guidelines sentence, notwithstanding the panel majority's indication to the contrary. The majority states that the "reports [considered by the district court] also include the probation office's recommendation for a sentence of 41 months." The majority fails to include the fact that the probation office's 41-month recommendation relied on the erroneous crime-of-violence enhancement. Also, the district court's statement of reasons reflects the "court determination of the advisory guideline range" as 41-51 months. In the statement of reasons for the judgment, the district court checked off the section signaling that it was

imposing a "sentence within an advisory guideline range." The statement of reasons includes no indication that the district court also sought to impose an alternative, non-Guidelines sentence. Further, treating the district court's sentence as a non-Guidelines sentence leads to application of 18 U.S.C. § 3553(c)(2), which requires the district court to provide "reasons . . . stated with specificity in the written order of judgment and commitment" to justify a non-Guidelines sentence. See United States v. Jones, 444 F.3d 430, 442-43 (5th Cir. 2006) (explaining that § 3553(c)(2) remains binding post-Booker). Here, the district court's statement of reasons provides no support for a non-Guidelines sentence.

I fail to see how the majority can separate the district court's erroneous crime-of-violence enhancement from the sentence imposed. Unlike the situation in Tzep-Mejia, the record in this case shows that the district court improperly calculated the Guidelines range, and that it imposed a sentence resulting from the improper calculation. See 18 U.S.C. § 3742(f)(1) (requiring remand of sentences "imposed as a result" of error in Guidelines calculation). Gall makes clear what our precedent and § 3742(f)(1) already require in this situation: we must vacate and remand for resentencing. See Gall, 128 S. Ct. at 597 (instructing appellate courts to first ensure that district courts properly calculate the applicable Guidelines range); Tzep-Mejia, 461 F.3d at 526 ("If the district court makes an error in an application of the Guidelines,

we vacate the resulting sentence without reaching the sentence's ultimate reasonableness.").

Even assuming that the district court properly calculated the Guidelines range such that we could review the sentence as a non-Guidelines sentence, the district court failed to meet Gall's requirement that the court adequately explain its non-Guidelines sentence based on the factors set forth in § 3553(a). See Gall, 128 S. Ct. at 597. The district court's statement that it "considered the arguments made earlier as well as the information in the report," suggests that it was aware of the government's position that the court could use Bonilla's prior crime to justify a non-Guidelines sentence. However, the district court never adopted this reason during the hearing, nor did it state any other reasons consistent with § 3553(a) to justify a non-Guidelines sentence. The fact that the district court provided a statement of reasons consistent with the application of a Guidelines sentence including the erroneous enhancement undermines the idea that the district court adopted the government's non-Guidelines argument.

The statutory problem with the district court's lack of reasons has already been noted. But the Supreme Court cases cited by the majority also indicate that the district court was required to provide more than it did to adequately explain the non-Guidelines sentence in this case. As quoted by the majority, Rita indicates that § 3553(c) does not "insist[] upon a full

opinion in every case." Rita v. United States, 127 S. Ct. 2456, 2468 (2007). However, the "appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon circumstances." Id. In the specific circumstances presented by Rita, the Supreme Court found the district judge's brief statement to be legally sufficient for a sentence imposed within the properly calculated Guidelines range. See id. ("[W]hen a judge decides to simply apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation."). Rather than reviewing a within-Guidelines sentence, here, the majority struggles to analyze Bonilla's sentence as an alternative non-Guidelines sentence. Under the circumstances of this case, where the crime-of-violence enhancement was challenged below and the imposition of a non-Guidelines sentence is dubious, we must require more of the district court than a simple generalization: "the court has considered the arguments made earlier . . . and as well as the information in the report . . . [a]nd keeping in mind the factors that the court has to consider in imposing a sentence, the court is going to impose a sentence it believes to be reasonable." See id. ("Where the judge imposes a sentence outside the Guidelines, the judge will explain why he has done so." (emphasis added)); Gall, 128 S. Ct. at 597 ("If [the judge] decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of

the variance."). Our deference to district courts in sentencing stems from their "superior position to find facts and judge their import under § 3553(a)" and their "institutional advantage" in seeing many more Guidelines sentences than do appellate courts. See Gall, 128 S. Ct. at 597-98. When a district court exercises these advantages and provides reasons for its non-Guidelines sentences, it promotes the perception of fair sentencing and our deference is certainly warranted. See id. at 597; Rita, 127 S. Ct. at 2463 & 2467. In contrast, a non-Guidelines sentence based on the district court's unsupported conclusion as to reasonableness does not promote perception of fair sentencing; it hinders it. Moreover, the appellate court is left to speculate as to the reasons supporting the district court's sentence, like the majority does in this case.

The majority's strained attempt in Part III to explain the reasonableness of the district court's sentence provides a glaring example of the speculation required when the district court fails to provide any reasons of its own. To provide support for the non-Guidelines sentence that the district court did not impose, the majority tasks itself with reviewing "the entire sentencing record" to find reasons the district court may have used had it imposed a non-Guidelines sentence. But none of the majority's rationale was ever mentioned or adopted by the district court. Moreover, the panel majority seems to admit the inadequacy of the rationale provided by the

district court, finding the district court's reasons to be "minimally sufficient," and "strongly recommend[ing]" that future district courts state reasons explicitly on the record. The majority recognizes that "[a] clear statement of reasons on the record also serves to prevent the inefficiency that would result from remand and resentencing if on appeal we had been unable to determine the court's reasons from the record." This perceived inefficiency in remanding Bonilla's individual case, rather than the Supreme Court's dictates in Gall and Rita, seemingly drives the majority's decision to affirm.

While the majority suggests that remand in this individual case may be inefficient, I believe that affirming this non-Guidelines sentence could create more troubling inefficiencies in the future. The majority's opinion may be taken to say that if the district court indicates any intent to impose an alternative non-Guidelines sentence, then we as an appellate court will scour the record to determine whether we can affirm such a sentence. Rita and Gall made clear that the job of justifying such sentences is not ours. And while I do not intend to preclude the practice of alternative sentencing by district courts, alternative sentences must comply with the requirements set forth in the Sentencing Reform Act and the Supreme Court's decisions. See United States v. Smalley, 517 F.3d 208, 213-14 (3d Cir. 2008). I recognize that were we to remand, the district court could have at its disposal the necessary tools to impose a reasonable non-Guidelines sentence of 41-months'

imprisonment.  See United States v. Lopez-Salas, 513 F.3d 174, 181 (5th Cir. 2008) (per curiam) (noting that a prior violent offense, even if not a "crime of violence" under the Guidelines, could be used to justify a non-Guidelines sentence under § 3553(a)).  And while this may be true, the Supreme Court's recent precedent makes it clear that sentencing is the job of the district court, not the appellate court.  As such, we should vacate and remand to allow the district court to resentence Bonilla without the erroneous crime-of-violence enhancement.

For the foregoing reasons, I respectfully dissent.