# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 30, 2011

No. 10-10037

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

CURTIS ONEAL RHINE

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before JONES, Chief Judge, and DENNIS and CLEMENT, Circuit Judges.

EDITH H. JONES, Chief Judge:

Curtis Oneal Rhine pled guilty to one count of possession with intent to distribute cocaine base and one count of being a felon in possession of a firearm. After calculating a sentencing range of 30 to 37 months under the United States Sentencing Guidelines ("Guidelines"), the district court sentenced Rhine to 180 months in prison, reasoning that the higher sentence was appropriate in light of Rhine's past involvement with a drug-trafficking organization. Because the district court adhered to correct sentencing procedure and imposed a sentence that is substantively reasonable, we affirm its non-Guidelines sentence.

A police officer stopped Curtis Oneal Rhine for a traffic violation on October 24, 2007. After Rhine admitted to smoking marijuana, the officer took

No.  10-10037

him into custody.  A search of Rhine's vehicle uncovered two firearms under the driver's seat, and a search of Rhine's person revealed a bag containing 1.89 grams of crack cocaine.

Seventeen months earlier, in an investigation focused on Crips gang members, the FBI had indicted more than 30 people involved in a drug-trafficking ring dubbed the "Fish Bowl."  Reports from the FBI and the Fort Worth Police Department indicated that Rhine was connected with the Fish Bowl, though he escaped prosecution because the FBI never caught him in the act of selling drugs.  Mindful of these reports, the probation officer concluded that Rhine's current possession was part of the same course of conduct as the Fish Bowl activities.  She therefore concluded that Rhine was responsible for distributing at least 4.5 kilograms of crack cocaine.  This conclusion resulted in an increased offense level under the Guidelines and, in light of Rhine's criminal history, a sentencing range of 292-365 months.  The district court imposed a sentence of 360 months, and Rhine appealed to this court, arguing that the offenses to which he pled guilty were not part of a "common scheme" or "course of conduct" encompassing the Fish Bowl activities.  This court agreed and remanded the case for re-sentencing.  *United States v. Rhine ("Rhine I")*, 583 F.3d 878, 891 (5th Cir. 2009).

On remand, the probation officer computed a new Guidelines range of 30-37 months, reflecting a lower offense level.  The district court, however, imposed consecutive terms of 120 months for the drug offense and 60 months for Rhine's firearm offense.  In explaining the 180-month sentence, the court stated the following:

> Well, I'm convinced that a reasonable sentence in this case is one that would take into account his prior similar drug conduct, the drug activities that he engaged in that "Fish Bowl" area that was

2

No.  10-10037

mentioned in the presentence report.  And for that activity to be taken into account, the sentence would have to be somewhat above the top of the advisory guideline range.

Considering all of the factors the Court is to consider under [18 U.S.C. § 3553(a)], I've concluded that a sentence that would aggregate a total of 180 months would be a sentence that would be required to address the defendant's history and criminal conduct.

. . . . [A] sentence of at least that much would be required[] to adequately reflect the seriousness of the offense conduct, to promote respect for the law, provide just punishment for the offense, to afford adequate deterrence for future criminal conduct, and to protect the public from further crimes of the defendant.

. . .

And if you viewed it from the standpoint of a guidelines sentence, and I don't think you need to, the sentence I've imposed should appropriately be viewed as a variance and would be a reasonable sentence if viewed that way.

If viewed from the standpoint of the sentencing guidelines, departure under the guidelines, the reasons given by the probation officer . . . in my view are appropriate to justify the sentence I've imposed as a guideline requirement.

In the Statement of Reasons (SOR), the district court again treated the sentence as both a non-Guidelines sentence and as a departure under the Guidelines.  The court checked a box on the SOR form indicating that "[t]he court imposes a sentence outside the advisory sentencing guidelines system," but it proceeded to complete a section of the SOR, Section V, relating to Guidelines-authorized departures.

Rhine appeals his sentence.

Following *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005), "appellate review of sentencing decisions is limited to determining whether they are 'reasonable'" under the "familiar abuse-of-discretion standard of review." *Gall v. United States*, 552 U.S. 38, 46, 128 S. Ct. 586, 594 (2007). Reasonableness has two parts:  procedural and substantive reasonableness.

No.  10-10037

The former requires that the district court calculate the Guidelines range, consider the § 3553(a) factors, and explain the sentencing decision; the latter depends on "the totality of the circumstances, including the extent of any variance from the Guidelines range." *Id.* at 51.

As a preliminary matter, we hold that the district court imposed a non-Guidelines sentence. Appellant would create confusion on this point by focusing on the court's suggestion that the sentence is also defensible as a variance or departure under the Guidelines. Even those comments, however, reveal the court's principal intention to impose a non-Guidelines sentence. In stating that "if you viewed it from the standpoint of a guidelines sentence, *and I don't think you need to . . .*", the district court showed that its purpose was to sentence outside the Guidelines while offering the backup justification that the sentence passes muster even if the Guidelines apply. Likewise, the district court's decision to complete Section V of the SOR presents an alternative justification for the sentence as well as the district court's desire to indicate which factors in § 3553(a) influenced its decision, an option available only in Section V. The court also checked option D under Section IV, indicating "a sentence outside the advisory sentencing guideline." We are persuaded here that the district court clearly intended primarily to sentence Rhine outside the Guidelines framework.

## A.  Procedural Reasonableness

*Gall* requires the sentencing court to begin its work by calculating the applicable Guidelines range. 552 U.S. at 49. Failure to do so eliminates "a necessary factor in determining reasonableness." *United States v. Gutierrez-Hernandez*, 581 F.3d 251, 256 (5th Cir. 2009). Other procedural errors include "treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately

4

No.  10-10037

explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall*, 552 U.S. at 51.

In the present case, the district court computed the correct Guidelines range of 30-37 months for a category IV criminal history and a total offense level of 15.  The court also considered the § 3553(a) factors, stating that a sentence of at least 180 months was necessary to "adequately  reflect the seriousness of the offense conduct, to promote respect for the law, provide just punishment for the offense, to afford adequate deterrence for future criminal conduct, and to protect the public from further crimes of the defendant." *See* 18 U.S.C. § 3553(a)(2)(A)-(C).  The court also noted that Rhine had benefitted from his imprisonment and would "continue to benefit from the kind of activities and programs that are available in the prison." *See* 18 U.S.C. § 3553(a)(2)(D).  The court's explanation of the § 3553(a) factors was sufficient to communicate the court's reasons for imposing a non-Guidelines sentence. *Rita v. United States*, 551 U.S. 338, 357-58, 127 S. Ct. 2456, 2469 (2007) (stating that the purpose of a district court's explanation in a non-Guidelines case is to "provide relevant information to both the court of appeals and ultimately the Sentencing Commission.").

To the extent it is relevant, we also address the court's inclusion of Rhine's Fish Bowl activities as part of "the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).  Appellant argues that *Rhine I* foreclosed consideration of his involvement with the Fish Bowl drug ring.  He is mistaken.  This court's ruling in *Rhine I* addressed the particular question whether Rhine's offense (possession with intent to distribute) included only the 1.89 grams of crack cocaine in his possession on October 24, 2007 or all of the drugs he helped distribute through the Fish Bowl.  In drug cases, the probation officer may calculate an offense level based on the defendant's immediate conduct plus any "relevant conduct," as defined under the Guidelines. *Rhine I* held that the Fish

5

No.  10-10037

Bowl drug trafficking was not relevant conduct to the offense of conviction.  Our decision did not, however, make the Fish Bowl chapters of Rhine's past disappear.  On resentencing, the district court considered Rhine's involvement with the Fish Bowl organization for a different purpose—not as part of his current offense, but as part of his "history" under § 3553(a)(1).  The Supreme Court has described § 3553(a)(1) as "a broad command."  *Gall*, 552 U.S. at 50 n.6.  *Rhine I* did not narrow the field of relevant history, and we decline to do so now.

Addressing the sentence as a variance, or non-Guidelines sentence, the dissent criticizes both the procedural and substantive adequacy of the trial court's sentence.[1]  We are unpersuaded.  Procedural reasonableness is governed in this circuit by *United States v. Mares*,  402 F.3d 511, 519 (5th Cir. 2005) and more recently by *United States v. Bonilla*,   524 F.3d 647 (5th Cir. 2008).  *Bonilla*, written in the light of *Gall* and *Rita*, explained that the adequacy of a district court's articulation of its reasons for imposing a sentence must be judged in light of the proceeding as a whole, including the facts revealed in the PSR.  *Id.* at 657.  The fact that leapt out in that case (unmentioned by our dissenting brother) was that Bonilla had bludgeoned a man to death in a crime that did not count for purposes of his Guidelines criminal history.  *Id.* at 650, 652-53.  This "aggravating factor" inspired the district court's obvious, albeit "minimally" articulated, choice of a higher sentence.  *Id.* at 657.  So here, the PSR contained statements from numerous defendants who pled guilty to involvement in the Fish Bowl drug trafficking ring that Rhine was a major supplier of crack cocaine, accounting conservatively for at least 4.5 kilograms.  Like the bludgeoning in *Bonilla*, Rhine's role in the Fish Bowl is excluded from Rhine's criminal history

---

[1] The dissent also disagrees with the district court's sentence if it is viewed as a departure within the Guidelines framework.  Because we reject that characterization, we need not respond to that analysis.

under the Guidelines. The district court should not have to guess, when expressing its reasons for issuing a sentence, that this court will close our eyes to the obvious implications of such deep involvement in the drug trade.

From any standpoint, the district court followed the Guidelines procedurally.

## B. Substantive Reasonableness

In reviewing a sentence for substantive unreasonableness, "the court should consider the totality of the circumstances, including the extent of any variance from the guidelines range." *United States v. Brantley*, 537 F.3d 347, 349 (5th Cir.2008) (internal quotation omitted). A deviation from the Guidelines range will not alone make a sentence substantively unreasonable. *Gall*, 552 U.S. at 47 ("We also reject the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence.").

The substance of Rhine's sentence—180 months incarceration—does not represent an abuse of the district court's discretion. The court explained that a sentence of 180 months was necessary because of Rhine's "prior similar drug conduct . . . in that 'Fish Bowl' area that was mentioned in the presentence report." The court then proceeded to discuss each of the statutory purposes in § 3553(a)(2). From a substantive standpoint, the district court's choice to impose an upward variance expressly based on the § 3553(a) factors and Rhine's unchallenged drug trafficking was hardly arbitrary. *See United States v. Valdez*, 453 F.3d 252, 262 (5th Cir. 2006) ("A district court may adopt the facts contained in a presentence report ('PSR') without further inquiry if those facts have an adequate evidentiary basis with sufficient indicia of reliability and the defendant does not present rebuttal evidence or otherwise demonstrate that the information in the PSR is unreliable.") (internal quotations and modifications

No.  10-10037

omitted).  The sentence is half the statutory maximum for the offenses to which Rhine pled guilty.

Rhine's challenge to the substance of his sentence is little more than a corollary to his procedural argument: if the district court could not take cognizance of his Fish Bowl involvement, then the 180-month sentence would be substantively unreasonable under the remaining relevant circumstances. Because the procedural argument fails, its corollary is moot.

Under the circumstances, we see no abuse of discretion in sentencing Rhine to a combined 180 months for his drug and firearm crimes.

Because the court's procedures were reasonable and yielded a substantively reasonable non-Guidelines outcome, we AFFIRM.

**AFFIRMED.**

DENNIS, Circuit Judge, dissenting:

This court previously vacated the sentence of Curtis Oneal Rhine, the defendant, and remanded his case for re-sentencing because the district court committed procedural error by enhancing Rhine's offense level for conduct entirely unrelated to his counts of conviction, namely Rhine's alleged involvement in the "Fish Bowl" drug trafficking scheme. *United States v. Rhine* (*Rhine I*), 583 F.3d 878, 881 (5th Cir. 2009). On remand, the district court correctly calculated that the proper Sentencing Guidelines sentencing range for the counts of conviction was 30 to 37 months of imprisonment. Nonetheless, relying upon the same extraneous conduct that motivated its earlier sentence, the district court imposed a sentence of 180 months of imprisonment, a 386.5% increase over the top of the correctly calculated Guidelines range. It claimed that such a sentence could be justified alternatively as a variance or a departure. *See United States v. Lopez-Velasquez*, 526 F.3d 804, 807 (5th Cir. 2008) (indicating that "variances" are an expression of the district court's discretion at sentencing and that "departures" are the result of the application of Guidelines provisions).

Regardless of how one characterizes the sentence, the district court again reversibly erred. If one views the sentence as a variance: (1) the district court committed procedural error by failing to "adequately explain the chosen sentence," particularly its "deviation from the Guidelines range." *See Gall v. United States*, 552 U.S. 38, 51 (2007) (stating that in reviewing sentences, appellate courts "must first ensure that the district court committed no significant procedural error, such as . . . failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range"); *see also Rita v. United States*, 551 U.S. 338, 356-57 (2007) (stating substantially the same). "[W]hen the judge elects to [vary] a . . . sentence, [he] should carefully articulate the reasons [he] concludes that the sentence [he] has

selected is appropriate for that defendant. These reasons should be fact specific . . . ." *United States v. Mares*, 402 F.3d 511, 519 (5th Cir. 2005) (footnote omitted). Here, the district court did nothing more than assert that it intended to punish Rhine for his alleged involvement in the Fish Bowl drug trafficking scheme, that it had considered the statutorily required factors, and that it believed a 180 months sentence was appropriate. It provided no fact-specific reasons to explain why it concluded the sentence imposed was appropriate. (2) Accordingly, the record also indicates that the sentence was arbitrarily selected. Therefore, assuming arguendo that the sentencing was procedurally sound, the sentence imposed was substantively unreasonable as the district court presented no justification explaining or supporting its degree of variance. *See Gall*, 552 U.S. at 50, 51 ("Assuming that the district court's sentencing decision is procedurally sound, the appellate court should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard. . . . We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one.").

Viewing the sentence as a departure, I conclude that each of the Guidelines provisions that the district court claimed applied are inapplicable under circuit law and the law of this case. The district court justified each departure based upon Rhine's alleged involvement in the Fish Bowl drug trafficking scheme. However, the provisions the court invoked require that the conduct justifying their imposition be part of or similar to the offense of conviction. In *Rhine I*, we held that the Fish Bowl conduct was not part of or similar to the offenses of conviction. 583 F.3d 878.

Therefore, I would vacate the defendant's sentence and remand this case, yet again, for re-sentencing. Accordingly, I respectfully dissent.

**I.**

Many of the relevant facts are detailed in this court's previous review and vacatur of Rhine's sentence. "Late in October 2007, a Fort Worth police officer conducted a routine traffic stop of a vehicle in which Rhine was occupying the front passenger seat. . . . When the officer smelled marijuana in the vehicle, he asked Rhine whether he had been smoking. When Rhine replied that he had smoked marijuana earlier that evening, the officer asked him to step out of the vehicle." *Rhine I*, 583 F.3d at 881. "After a background check revealed that Rhine had several outstanding warrants for his arrest, the officer took him into custody and conducted a search of the vehicle, discovering two firearms under the passenger seat where Rhine, a convicted felon, had been seated. The officer then took [Rhine] to the Fort Worth city jail, where an intake search revealed a small plastic bag containing 1.89 grams of cocaine base (crack cocaine) concealed in Rhine's anal cavity," a portion of which, it was later revealed, was to be sold. *Id*. "The grand jury returned a two-count indictment charging Rhine with (1) possession with intent to distribute 1.89 grams of cocaine base . . . and (2) possession of a firearm by a felon . . . ." *Id*. "Rhine pleaded guilty to both counts without a plea agreement." *Id*.

A probation officer prepared a pre-sentence report. Of particular relevance to this case and appeal, that report detailed Rhine's alleged involvement in a drug trafficking ring operating in an area known as the "Fish Bowl." The report explained that, "[i]n May 2006—approximately 17 months before Rhine's arrest for the instant drug offense—an ongoing FBI investigation known as the 'Fish Bowl' investigation culminated in a large-scale drug raid in Fort Worth, Texas. The raid resulted in the indictments of more than 30 individuals for a variety of criminal offenses, most of which involved drug trafficking." *Id*. "After conducting post-arrest interviews with many of the individuals apprehended during the raid, FBI Special Agent J. Coffindaffer . . . reported that several individuals had implicated Rhine in the criminal drug activity." *Id*. at 881-82. "As agents were

11

unsuccessful in completing a controlled drug buy from Rhine, he was not charged along with the other Fish Bowl participants." *Id.* at 882. Nonetheless, based upon the evidence produced by the FBI investigation, "the probation officer deduced that . . . Rhine had possessed at least 4.5 kilograms of crack cocaine during the course of his alleged participation in the Fish Bowl drug-trafficking operations . . . ." *Id.* at 883.

The pre-sentence report recommended that pursuant to Guidelines § 1B1.3, Rhine's alleged involvement in the Fish Bowl drug trafficking scheme be taken into account in calculating Rhine's recommended Guidelines sentencing range. Section 1B1.3 provides that when the offense level is determined by the "quantity of [the] substance involved" in the offense, such as by the amount of drugs one is accused of trafficking, the probation officer and court may use uncharged conduct that is "part of the same course of conduct or common scheme or plan as the offense of conviction" to calculate the appropriate offense level. U.S.S.G. §§ 1B1.3(a), 3D1.2(d) (cross-referenced in § 1B1.3); *see also* U.S.S.G. § 2D1.1 (providing the offense levels for the relevant drug offenses). Applying § 1B1.3, "[t]he probation officer determined that Rhine's Total Offense Level was 37 with a Criminal History Category of IV, producing a Guidelines range of 292 to 365 months imprisonment." *Rhine I*, 583 F.3d at 883.

At the first sentencing, "[t]he district court adopted the findings of the [pre-sentence report] . . . overruling Rhine's objections . . . . The court said that 'all of the transactions that were taken into account by the probation officer were sufficiently connected or related to each other to warrant the conclusion that they were a part of a single episode or spree or ongoing series of offenses.'" *Id.* at 884. "Adopting the Guidelines calculations set forth in the [pre-sentence report], the district court sentenced Rhine to the statutory maximum period of imprisonment—240 months as to Count 1 and 120 months as to Count 2, to run consecutively." *Id.*

12

This court vacated that sentence and remanded for re-sentencing. *Id.* at 891. We explained that pursuant to Guidelines § 1B1.3, "[i]n calculating a defendant's base offense level, the district court may consider other offenses in addition to the acts underlying the offense of conviction," but those other offenses must be part of a common scheme or plan or the same course of conduct as a count of conviction. *Id.* at 885. "We conclude[d] that Rhine's participation in the Fish Bowl drug-trafficking ring and his offense[s] of conviction cannot be considered part of a common scheme or plan. There is no evidence that Moore, Rhine's only accomplice in his offense[s] of conviction, played any role in the Fish Bowl drug-trafficking ring. Neither is there evidence that any Fish Bowl participant was involved in the instant incident. Further, the offenses do not share a common *modus operandi*: In the Fish Bowl offense, Rhine is alleged to have been a large-scale supplier to mid-level dealers; by contrast, in the offense[s] of conviction, he attempted to sell a small quantity of crack cocaine to an individual buyer for five dollars. Finally, the only common purpose linking the . . . offenses is Rhine's motivation to profit from the distribution of crack cocaine, which . . . is by itself insufficient to connect the offenses as separate parts of a common scheme or plan." *Id.* at 886.

Moreover, the panel stated that Rhine's instant offenses were not part of the same course of conduct as the Fish Bowl conduct because "temporal proximity, similarity, and regularity are all lacking." *Id.* at 891. "Here, at least 17 months separate[d] any participation by Rhine in the Fish Bowl drug-trafficking ring from his offense[s] of conviction." *Id.* at 887. We also found "counter-indicative the lack of evidence that Rhine engaged in any intervening criminal activity, the presence of which might link his earlier conduct to the offense[s] of conviction." *Id.* "[S]imilarity is lacking[] as the differences between the[] offenses are significant. The quantities, methods of distribution, participants, and nature of the transactions—as well as the defendant's role in

them—all vary substantially." *Id.* at 889. "Rhine's instant offense[s] involved possession of a very small quantity (1.89 grams) of crack cocaine with intent to sell some lesser portion of it to an individual buyer for five dollars; the sale took place in a vehicle; and Buchanan, the individual purchaser for her personal consumption, had just learned about Rhine from some unnamed source at a service station. In contrast, Rhine's alleged participation in the Fish Bowl drug-trafficking ring was said to have involved his acting as a large-scale manufacturer, distributor, and supplier of kilogram quantities of crack cocaine to numerous mid-level dealers." *Id.* at 888-89. "Further, there is no evidence that the cocaine forming the basis for Rhine's offense of conviction shared a common source, supplier, or destination with the cocaine involved in the Fish Bowl activities." *Id.* at 889. "[R]egularity is [also] lacking, as there is no evidence that Rhine engaged in any intervening criminal activity—much less drug distribution—between the Fish Bowl drug-trafficking ring and his offense[s] of conviction." *Id.* at 890.

On remand, the probation officer revised the pre-sentence report, in what is referred to as the second and third addenda to the pre-sentence report. She found that based upon Rhine's instant convictions, but not taking into account his participation in the Fish Bowl activity, he had a criminal history category of IV and an offense level of 15. This provided Rhine a recommended Sentencing Guidelines sentencing range of 30-37 months of imprisonment. The parties do not object to this calculation. Further, the defense noted, uncontroverted, that had Rhine been convicted of his alleged involvement in the Fish Bowl activity "he would have received three points in his criminal history . . . [resulting] in a guideline range of 37 to 46 months."

In the second and third addenda, the probation officer explained that the district court could increase the recommended sentence in two ways. The probation officer suggested that "a variance outside of the advisory guidelines

14

may be warranted for the aforementioned reasons." In the second and third addenda, those aforementioned reasons included merely a recounting of the case's procedural history and the fact that Rhine's alleged involvement in the Fish Bowl drug trafficking "did not enter into the determination of the applicable guideline range." The revised reports in no way elaborated on why a variance was warranted, nor did they indicate or explain how much of a variance would be appropriate in light of Rhine's alleged involvement in the Fish Bowl activity. Moreover, such information was not contained within the probation officer's original sentencing report. That report, which had recommended enhancing Rhine's offense level in light of his alleged involvement in the Fish Bowl activity, had stated that "there are no known facts that warrant a sentence outside the advisory guideline system."[1] Further, none of the defendant's objections to the pre-sentence reports nor the Government's responses to those objections indicated what sort of variance would be appropriate. Regarding the possibility of a variance, the Government stated only that "the court may choose to impose a variance, that is, a non-Guidelines sentence, based on [the] § 3553(a) factors, including the need to promote respect for law, deterrence of future criminal conduct, and the need to protect the public."

The second and third addenda to the pre-sentence report also indicated that the district court could alternatively increase the defendant's sentence by applying either, or both, of two Guidelines departure provisions, §§ 4A1.3 and 5K2.0. Section 4A1.3 allows a departure "[i]f reliable information indicates that the defendant's criminal history category substantially under-represents the

---

[1] In the first addendum to the pre-sentence report, the addendum prepared during the first sentencing in response to the defendant's objections to the original pre-sentence report, the probation officer did note that "[s]hould the court sustain the defendant's objection and rule the 'Fish Bowl' activities were not a part of the relevant conduct, it may determine the conduct is other criminal conduct which can be used for . . . a sentence outside of the advisory guideline system (variance), pursuant to 18 USC § 3553(a)(1), (a)(2)(B), and (a)(2)(C)."

seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." Section 5K2.0 "[i]n general" allows a departure where "the court finds, pursuant to 18 U.S.C. 3553(b)(1), that there exists an aggravating or mitigating circumstance." In the second addendum, the probation officer had also recommended a departure pursuant to Guidelines § 5K2.21, but she withdrew that recommendation in her third addendum, concluding that the provision was inapplicable. The defendant objected to the applicability of these departure provisions.

At sentencing, the district court "adopt[ed] as the fact findings of the [c]ourt the facts set forth in th[e second and third] addenda [to the original pre-sentence report]." Therefore the court concluded "[t]hat the total offense level is 15, Criminal History Category is IV, that the imprisonment range as to Counts 1 and 2 . . . is 30 to 37 months." The court then explained: "I'm convinced that a reasonable sentence in this case is one that would take into account [the defendant's] prior similar drug conduct, the drug activities that he engaged in, in that 'Fish Bowl' area that was mentioned in the presentence report. And for that activity to be taken into account, the sentence would have to be somewhat above the top of the advisory guideline range. Considering all the factors the Court is to consider under 18 United States Code, Section 3553(a), I've concluded that a sentence that would aggregate a total of 180 months would be a sentence that would be required to address the defendant's history and criminal conduct. . . . That, in my view, would be required, a sentence of at least that much would be required, to adequately reflect the seriousness of the offense conduct, to promote respect for the law, provide just punishment for the offense, to afford adequate deterrence for future criminal conduct, and to protect the public from further crimes of the defendant. And apparently the defendant is benefitting from his imprisonment he's had so far, and I believe he'll continue to benefit from the kinds of activities and programs that are available in the

16

prison.[2] So I'm satisfied a sentence of imprisonment of the kind I've imposed would be necessary and appropriate to serve the objectives of sentencing and promote respect for the law and deterrence and protection of the public. . . . I believe a sentence of that kind would be reasonable sentence that would adequately address everything the Court should consider in sentencing. . . . [T]he sentence I've imposed should appropriately be viewed as a variance and would be a reasonable sentence if viewed that way." At sentencing, the district court provided no other justifications for the variance. The defense objected to the sentence as unreasonable.

The district court also stated that the sentence could alternatively be viewed as a "departure under the guidelines" and that the reasons given in "the third addenda, in my view are appropriate to justify the sentences I've imposed as a Guideline requirement." Beyond stating what ultimate sentence it believed was appropriate, the district court did not explain how the departure provisions should be applied to enhance the defendant's offense level, criminal history

---

[2] This list of reasons for the sentence merely reiterates the statutory factors the court is required to consider under 18 U.S.C. § 3553(a), without adding any additional information. Specifically, § 3553(a) states:

> Factors to be considered in imposing a sentence.--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider–
>> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>> (2) the need for the sentence imposed--
>>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>> (B) to afford adequate deterrence to criminal conduct;
>>> (C) to protect the public from further crimes of the defendant; and
>>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

category or sentencing range. The defendant objected to the applicability of the departure provisions.

The district court subsequently entered a written statement of reasons, purportedly explaining its sentence. The statement of reasons indicated that the court was adopting the facts in each of the pre-sentence reports as the findings of the court. The statement of reasons also indicated that the sentence could be viewed as a variance or a departure. By checking boxes beside a pre-printed list of reasons for the variance, the court indicated that the variance was justified because of "the nature and circumstances of the offense and the history and characteristics of the defendant pursuant to 18 U.S.C. § 3553(a)(1)," "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense (18 U.S.C. § 3553(a)(2)(A))," and "to protect the public from further crimes of the defendant (18 U.S.C. § 3553(a)(2)(C))." The court also wrote in the statement of reasons that "[t]he sentence is a reasonable sentence that appropriately considers the advisory guidelines range and all factors mentioned in 18 U.S.C. § 3553(a)." The court further stated that when viewing the sentence as a departure, it was justified based on Guidelines §§ 4A1.3 and 5K2.0. Contrary to its statements at sentencing, the court also indicated it had applied Guidelines § 5K2.21—the Guidelines departure provision that the third addendum, on which the court purportedly relied at sentencing, had indicated was inapplicable to the defendant.

In sum, claiming to need to increase Rhine's sentence to reflect his alleged involvement in the Fish Bowl activity, the district court imposed a 147-month variance above the top of the correctly calculated Guidelines sentencing range. It thereby increased the defendant's sentence from three years to fifteen years of imprisonment. In doing so, it provided no explanation for that degree of variance except for indicating it adopted the findings in the pre-sentence report and repeating the § 3553(a) factors that it was required to consider. Seeking to

18

insulate its sentence from reversal as a variance, the district court also stated that the sentence could be justified based upon three Guidelines provisions, including one that the probation officer, in a report adopted as a finding of the court, indicated could not apply. The district court never indicated how these provisions increased the defendant's criminal history category, offense level or recommended sentencing range.

## II.

In *Gall v. United States,* the Supreme Court laid out a two-staged review for federal sentences. "[F]irst, [the appellate court must] ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range,[3] treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or *failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range.*" 552 U.S. 38, 51 (2007) (emphasis added). "Assuming that the district court's sentencing decision is procedurally sound, the appellate court should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard. When conducting this review, the court will, of course, take into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Id*.; *see also id*. at 41 ("[T]he extent of the difference between a particular sentence and the recommended Guidelines range is surely relevant . . . ."); *id*. at 47 ("In reviewing the reasonableness of a sentence outside the Guidelines range, appellate courts may therefore take the degree of variance into account and consider the extent of a deviation from the Guidelines.").

---

[3] This includes incorrectly applying the Guidelines departure provisions. *Dillon v. United States*, 130 S. Ct. 2683, 2688 (2010) (citing *United States v. Booker*, 543 U.S. 220, 259 (2005)).

From *Gall*, this court derived its now familiar bifurcated review of federal sentences. "'We first examine whether the district court committed any significant procedural error, such as: (1) failing to calculate (or improperly calculating) the applicable Guidelines range; (2) treating the Guidelines as mandatory; (3) failing to consider the 18 U.S.C. § 3553(a) factors; (4) determining a sentence based on clearly erroneous facts; or (5) failing to adequately explain the chosen sentence, including an explanation for any deviation from the Guidelines range.' Under this step of analyzing for procedural error, we review the district court's interpretation or application of the sentencing guidelines *de novo*, and its factual findings for clear error." *United States v. Gutierrez-Hernandez*, 581 F.3d 251, 254 (5th Cir. 2009) (footnote omitted) (quoting *United States v. Armstrong*, 550 F.3d 382, 404 (5th Cir. 2008)). "Next, if the district court's decision is procedurally sound, we consider the substantive reasonableness of the sentence, considering the factors in 18 U.S.C. § 3553(a)." *Id*. In such circumstances, "[w]e . . . review for abuse of discretion." *Id*.

## III.

In my view, the district court erred during re-sentencing, requiring this panel to vacate and remand for another re-sentencing. When viewing the sentence as a variance: (1) the district court committed procedural error by failing to adequately explain its chosen sentence and (2) because the district court provided no reasoned basis for its sentence, this court should also conclude that the sentence was arbitrarily imposed and therefore is substantively unreasonable. When viewing the sentence as a departure under the Guidelines, the district court committed procedural error by applying inapplicable Guidelines provisions.

## A.

A district court must adequately explain its chosen sentence. *Gall*, 552 U.S. at 51; *see also Rita*, 551 U.S. at 356, 357 ("The sentencing judge should set

forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority. . . . Where the judge imposes a sentence outside the Guidelines, the judge will explain why he has done so." (citing *United States v. Taylor*, 487 U.S. 326, 336-37 (1988)). Accordingly, this circuit has stated that "when the judge elects to give a non-Guideline sentence, . . . [a term used] to distinguish it from a Guidelines sentence which includes a sentence that has been adjusted by applying a 'departure' as allowed by the Guidelines[,] . . . she should carefully articulate the reasons she concludes that the sentence she has selected is appropriate for that defendant. These reasons should be fact specific and include, for example, aggravating or mitigating circumstances relating to personal characteristics of the defendant, his offense conduct, his criminal history, relevant conduct or other facts specific to the case at hand which led the court to conclude that the sentence imposed was fair and reasonable." *Mares*, 402 F.3d at 519 & n.7; *see also United States v. Jimenez*, 275 F. App'x 433, 437 (5th Cir. 2008) (unpublished) (stating that it was plain error for a district court to "not provide any fact-specific reasons for its upward departure to permit us to review [the] sentence for reasonableness" (citing *Mares*, 402 F.3d at 519)); *United States v. Rodriguez*, 523 F.3d 519, 525 (5th Cir. 2008) (citing *Mares*, 402 F.3d at 519, to establish that "the district court's comments at sentencing [were] adequate").

Such procedural requirements are consistent with those of other Circuits. For instance, the en banc Second Circuit, in a portion of the opinion concurred in by the entire court, stated that "in its explanation the district court must satisfy us that it has 'considered the parties' arguments' and that it has a 'reasoned basis for exercising [its] own legal decisionmaking authority.'" *United States v. Cavera*, 550 F.3d 180, 193 (2d Cir. 2008) (en banc) (alteration in original) (quoting *Rita,* 551 U.S. at 356). Accordingly, "what is adequate to fulfill

21

these purposes necessarily depends on the circumstances." *Id*. "[A] brief statement of reasons will generally suffice where the parties have addressed only 'straightforward, conceptually simple arguments' to the sentencing judge." *Id*. (quoting *Rita*, 551 U.S. at 356). "A district judge imposing a non-Guidelines sentence, however, should say why she is doing so, bearing in mind, once again, that 'a major departure [from the Guidelines] should be supported by a more significant justification than a minor one,' *Gall*, [552 U.S. at 50], and that varying from the Guidelines in a 'mine-run' case may invite closer appellate review . . . [*Kimbrough v. United States*, 552 U.S. 85, 110 (2007)]." *Id*. (first alteration in original).

Similarly, the Eleventh Circuit has stated that where a sentence differs from the recommended Guidelines range, the district court must not only indicate that it believed the sentence was reasonable in light of the statutory factors it is required to consider, but must also provide some explanation of why it believed the specific variance it imposed was justified and reasonable based upon the unique facts of the case. *United States v. Livesay,* 525 F.3d 1081 (11th Cir. 2008). In *Livesay,* the Eleventh Circuit vacated the defendant's sentence of 60 months probation, when the Guidelines had recommended 78-97 months of imprisonment, because—although the district court had explained that its sentence was motivated by the fact that the defendant "did substantially withdraw from the conspiracy" he was accused of participating in and its desire to "avoid unwarranted sentencing disparities among defendants with similar records who had been found guilty of similar conduct," such as the defendant's co-conspirators—"the district court . . . gave no reasoning or indication of what facts justified such a significant variance from the advisory Guidelines range." 525 F.3d at 1088, 1089, 1093. The Eleventh Circuit explained that the district court had "simply failed to explain its reasons for [its sentence] in a way that allows for meaningful appellate review and promotes the perception of fair

22

sentencing." *Id*. at 1093. "For example, the district court offered no explanation or reasoning of how a sentence of 60 months' probation (with 6 months' home detention) for an individual who pled guilty to knowingly playing an active and crucial supervisory role in a massive $1.4 billion fraud for at least five years reflected the seriousness of the offense or the nature and circumstances of the crime." *Id*. "[T]he district court provided nothing more than a conclusory statement that a variance from the advisory Guidelines range of 78 to 97 months' imprisonment to the ultimate sentence of 60 months' probation (with 6 months' home detention) satisfied Congress's important concerns of deterrence." *Id*. at 1094.

Likewise, in *United States v. Carter*, the Fourth Circuit vacated a below-Guidelines sentence because the district court gave insufficient reasons for its variance. 564 F.3d 325 (4th Cir. 2009). The Fourth Circuit highlighted that the district court had consulted with the probation officer in open court regarding sentencing adjustments it was considering. *Id*. at 328. However, when it imposed the sentence "the [district court] did not explain why a Guidelines sentence would 'overpunish' [the defendant]" and, while the court "summarized" the four "purposes in Section 3553(a)(2)" that it believed justified the sentence, it "did not explain how those purposes applied to [the defendant]." *Id*. at 329. The panel continued, "The district court thus erred in failing to articulate how the sentencing factors applied to the facts of the particular case before it." *Id*. at 329. "[I]t must place on the record an 'individualized assessment' based on the particular facts of the case before it. This individualized assessment need not be elaborate or lengthy, but it must provide a rationale tailored to the particular case at hand and adequate to permit 'meaningful appellate review.' Because the record here does not demonstrate that the district court conducted such an assessment and so does not reveal why the district court deemed the sentence it imposed appropriate, we cannot hold the sentence procedurally reasonable."

*Id.* at 330 (footnote omitted) (quoting *Gall*, 552 U.S. at 50). *See United States v. Hernandez*, 603 F.3d 267, 271 (4th Cir. 2010) ("In *Carter*, we held that a sentence was procedurally unreasonable when the district court failed to make an individualized assessment on the facts presented and to state the particular reasons for a sentence that varied . . . .").[4]

Consistent with this case law, in *United States v. Bonilla*—this circuit's only post-*Gall/Rita* case to meaningfully review the adequacy of a district court's reasons supporting its variance sentence—we explained that the district court's reasons for a 41-month variance sentence were "minimally sufficient" because when reviewing the record as a whole, the panel could determine the district court's "reasons" for both imposing a variance generally and selecting the specific sentence imposed. 524 F.3d 647, 657 (5th Cir. 2008). Although at sentencing the district court did nothing more than indicate that it was imposing a sentence that it believed was reasonable, it stated that its sentence was based upon reports in the record. Accordingly, we treated those reports as part of the court's explanation of the sentence and they detailed why the Government believed a 41-month sentence was proper in light of "the defendant's sporadic work and employment history, his problems with alcohol and homelessness" and prior arrests "related to alcoholism and homelessness that were not prosecuted."

---

[4] *See also United States v. Figueroa*, 622 F.3d 739, 743-44 (7th Cir. 2010) (vacating a sentence because the district court procedurally erred in failing to adequately explain its sentence because the district court indicated that its sentence was based upon impermissible "extraneous considerations" and did not state how the sentence was justified based upon the relevant facts of the case); *United States v. Lynn*, 592 F.3d 572, 581 (4th Cir. 2010) ("That the district court committed significant procedural error in sentencing [the defendant] seems clear. The court provided no individualized explanation for its substantial departure from the Guidelines."); *United States v. Dury*, 336 F. App'x 371, 373 (4th Cir. 2009) (unpublished) ("Here, as in *Carter*, the district court did not justify Dury's sentence with an adequate individualized rationale. . . . The district court failed to state how or which particular § 3553(a) factors applied to Dury, and the court's statement that it had considered the § 3553(a) factors could have applied to any sentence, regardless of the offense or defendant." (citing *Carter*, 564 F.3d at 328-29)).

*Id.* at 658. The reports also established that "the probation office's recommendation [was] for a sentence of 41 months." *Id.*[5]

Based upon these precedents, the district court in this case committed reversible procedural error by failing to adequately explain its sentence. As in *Livesay* and *Carter*, the district court made nothing more than conclusory statements in support of its variance sentence. In both its oral and written statements, the district court provided no individualized assessment of how the defendant's conduct warranted the instant sentence, indicating only that the § 3553(a) factors supported the sentence imposed. For instance, in its oral summation of its sentence, it stated that it "believe[d] [the] sentence [was] of that kind [that] would be a reasonable sentence that would adequately address everything the Court should consider." In its written statement of reasons, the only notation the court added, beyond checking boxes beside certain pre-printed statements indicating that it based the sentence upon the factors listed in § 3553(a), was that "[t]he sentence is a reasonable sentence that appropriately considers the advisory guideline range and all factors mentioned in 18 U.S.C. § 3553(a)."

The district court's passing reference to Rhine's alleged involvement in the Fish Bowl drug trafficking activity provides no basis on which to distinguish this case from *Livesay* and *Carter*. *But see* Majority Op. 2-3. Prior to announcing the sentence or articulating how the § 3553(a) factors applied to this case, the district court stated that the sentence should "take into account" the alleged Fish Bowl conduct as described in the pre-sentence reports. It never again mentioned

---

[5] *See also United States v. Mondragon-Santiago*, 564 F.3d 357, 363-64 (5th Cir. 2009) ("[T]he district court in this case did not give any reasons for its sentence beyond a bare recitation of the Guideline's calculation. . . . The district court did not mention Mondragon-Santiago's arguments, and the court's statement of reasons did not further illuminate its reasoning. . . . We conclude that the district court failed to adequately explain its reasons for the sentence imposed . . . ." (citing *Bonilla*, 524 F.3d 647)).

25

the Fish Bowl or any facts from the reports. In *Livesay* and *Carter*, each district court went farther, citing specific facts that it was taking into account at sentencing and consulting with the probation officer about sentence adjustments it was considering in light of the record. *Livesay*, 525 F.3d at 1088-89; *see also Carter*, 564 F.3d at 328. Nonetheless, the *Livesay* and *Carter* appellate courts concluded that this was insufficient because each of the district courts did not explain how they arrived at the sentences imposed. Similarly, the instant district court's single reference to the defendant's "drug activities . . . in that 'Fish Bowl' area that w[ere] mentioned in the presentence report" "g[ives] no reasoning or indication of [how the] facts justified such a significant variance." *Livesay*, 525 F.3d at 1093. The court at no point explained the manner(s) in which the facts contained in the pre-sentence reports regarding the Fish Bowl conduct translated into the variance sentence it imposed. Analogously, the instant district court stated that it believed the prison environment was beneficial for the defendant, but it did not explain why that fact indicated the defendant should be committed to a prison for fifteen years rather than the three years recommended by the Sentencing Guidelines. The statements regarding the sentence did not provide "fact specific" "reasons [for why the court concluded] that the sentence . . . selected [was] appropriate for that defendant." *See Mares*, 402 F.3d at 519.

Moreover, while the district court indicated that the sentence was based upon the statements in the pre-sentence reports, unlike in *Bonilla,* those reports provide no further explanation of the sentence imposed. Where in *Bonilla* the reports established that the Government and probation officer agreed upon the specific sentence the district court selected and those reports explained why that sentence was warranted based upon the facts in the record, the instant probation officer's report does nothing more than indicate that some variance may be

warranted, without providing any details as to how much of a variance would be proper.

The majority is simply incorrect that *Bonilla* stated that if facts in the record could have "inspired" the sentence selected, that is sufficient to satisfy *Gall, Rita*, and *Mares'* requirement that the district court explain its sentence. Majority Op. 6. The *Bonilla* majority homed in on the fact that "[t]he district court[] reference[d] . . . the[] arguments" in the record explaining and justifying the specific sentence imposed "before imposing a non-guideline sentence of [that length]" to establish that the district court "provide[d] adequate reasons for that decision." 524 F.3d at 658. It is exactly such a documented explanation and justification for the instant sentence that is lacking in this case. Without that, this court can only guess at how the district court arrived at the sentence imposed and thus the district court committed procedural error by failing to "adequately explain the chosen sentence." *Gall*, 552 U.S. at 50.

This case is all the more distinguishable from *Bonilla,* and thus the district court's explanations are all the more insufficient, when one looks to the course of the case as a whole. Unlike in *Bonilla*, this same district court judge previously indicated that the same conduct that underlay the instant sentence reasonably justified a sentence double the length, of thirty years imprisonment. Now based upon mere rote incantations of the § 3553(a) factors, the district court has pulled from thin air a sentence that essentially splits the difference between the prior sentence it imposed and the recommended sentence under the Guidelines. In doing so, the court has provided no explanation for its new and different conclusion. This court stated that the reasons given in *Bonilla* were "minimally sufficient"; therefore, the distinctions between this case and *Bonilla* establish that the district court's reasons in this case are insufficient to explain the sentence. 524 F.3d at 657.

Accordingly, I conclude that the district court committed procedural error by failing to adequately explain its sentencing decision.

**B.**

The district court's failure to provide any explanation for its sentence also indicates that the sentence was substantively unreasonable. *See United States v. Bradley*, 628 F.3d 394, 400 (7th Cir. 2010) (stating that a sentence is more likely to be found substantively reasonable "if the underlying analysis is 'sufficiently particularized to the individual circumstances of the case rather than factors common to offenders with like crimes'" (quoting *United States v. Miller*, 601 F.3d 734, 739 (7th Cir. 2010) (internal quotation marks omitted)). The Supreme Court has explained that substantive reasonableness review requires an appellate court not merely to determine whether the district court abused its discretion by imposing an unjustified term of imprisonment in light of the crime committed, but whether the district court abused its discretion because the reasons for the sentence do not support the sentence imposed. As it explained in *Gall*, "If [the district court] decides that an outside-Guidelines sentence is warranted, [it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one." 552 U.S. at 50; *see Pepper v. United States*, 131 S. Ct. 1229, 1239-40 (2011) ("'It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.' *Koon v. United States*, 518 U.S. 81, 113 (1996). Underlying this tradition is the principle that 'the punishment should fit the offender and not merely the crime.' *Williams v. People*, 337 U.S. 241, 247 (1949)."). Therefore, the Court concluded that the sentence at issue in *Gall* was

reasonable because the district court had clearly considered and reasonably weighed the specific facts and circumstances of the offender, crime and surrounding events to arrive at the sentence imposed. *Gall*, 552 U.S. at 57 ("The District Court quite reasonably attached great weight to the fact that Gall voluntarily withdrew from the conspiracy after deciding, on his own initiative, to change his life."); *see also Kimbrough*, 552 U.S. at 111 (stating that the sentence imposed in that case was substantively reasonable because in articulating the sentence the district court "properly homed in on the particular circumstances of Kimbrough's case").

Accordingly, this circuit and others have explained that a "sentence is substantively unreasonable if 'the district court selects a sentence arbitrarily.'" *United States v. Christman*, 607 F.3d 1110, 1118 (6th Cir. 2010) (quoting *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008)); *see also United States v. Coots*, No. 08-5497, 2011 WL 464631, at *7 (6th Cir. Feb. 10, 2011) (unpublished) (Clay, J., concurring in part and dissenting in part) ("In the instant case, Defendant's sentence is procedurally unreasonable and his substantial rights were impaired, because he was not provided an explanation of the specific basis for his sentence, with reference to his personal background, characteristics, and the nature of his offense. . . . On these same facts, the district court also abused its discretion by imposing a sentence that was substantively unreasonable . . . as here[] the sentence appears to have been arbitrarily selected . . . ." (citing *Christman*, 607 F.3d at 1121-22)); *United States v. Irey*, 612 F.3d 1160, 1165 (11th Cir. 2010) (en banc) (equating an "unbridled" exercise of discretion at sentencing with a substantively unreasonable sentence); *United States v. Burns*, 577 F.3d 887, 895-96 (8th Cir. 2009) (en banc) ("There must be some limits to the district court's discretion, for surely a district court's willy nilly mood-of-the-day reduction should not be insulated from appellate review . . . ."); *Mares*, 402 F.3d at 519 (stating that in this circuit's "reasonableness review" we must be able to

"infer that the judge has considered all the factors for a fair sentence"). Put another way, an unreasoned sentence is necessarily substantively unreasonable.

For the reasons I have already described, based upon the instant record I conclude that the district court arbitrarily selected the variance sentence it imposed and therefore imposed a substantively unreasonable sentence, abusing its discretion. The district court indicated that it chose to vary the sentence to "take into account" Rhine's alleged involvement in the Fish Bowl drug trafficking scheme. However, as described above, the district court merely declared the 180-month sentence after incanting all the required statutory considerations. Nothing in the record establishes why the court believed 143 months of additional imprisonment, over the top of the recommended Guidelines range, reasonably reflects the defendant's uncharged and unproven criminal conduct. This same district court previously thought that a sentence of twice that length, 360 months, was reasonable to reflect the Fish Bowl conduct. The defense, uncontroverted, explained at sentencing that had Rhine been charged and convicted of the Fish Bowl conduct, "he would have received three points in his criminal history . . . [resulting] in a guideline range of 37 to 46 months," a 0-to-6 month increase over the correctly calculated recommended Guidelines range. Therefore, based upon the record I am forced to conclude that the district court arbitrarily selected the sentence imposed.

The majority's attempt to characterize the sentence as substantively reasonable only reinforces this conclusion. The majority explains that based upon the record before us, it found that the district court had articulated reasons justifying "*an* upward variance," but not that the reasons given justify *the* variance imposed.  Majority Op. 7 (emphasis added). The very definition of an arbitrary judicial decision is that it is solely an expression of the judge's "prejudice or preference." *Black's Law Dictionary* 112 (8th ed. 2004). Put another way, a decision is arbitrary when there is no connection drawn between the

specific decision made and the bases for that decision. As I believe this is the case here, I would conclude that the district court imposed a substantively unreasonable sentence.

## C.

I also conclude that this court cannot affirm on the alternate ground suggested by the district court, that the sentence is justified as a departure. I conclude that based upon this court's prior decision in *Rhine I*, 583 F.3d 878, and the law of the case doctrine, each of the departure provisions relied upon by the district court is inapplicable. *See Pepper*, 131 S. Ct. at 1250 ("[A]s most commonly defined, the [law of the case] doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983) (internal quotation marks omitted)).

At sentencing and in its statement of reasons, the district court indicated that in light of Rhine's alleged involvement in the Fish Bowl drug trafficking scheme, two Guidelines departure provisions, §§ 4A1.3 and 5K2.0, justified its sentence. However, as relevant to this case, the plain language of § 4A1.3 states that the provision may only "[f]orm[] the [b]asis for [u]pward [d]eparture" in light of "[p]rior *similar* adult criminal conduct not resulting in a criminal conviction." (emphasis added). As described in Section I above, this court in *Rhine I* concluded that the Rhine's alleged "Fish Bowl" conduct is not "similar" to the instant offenses. We explained that "similarity is lacking[] as the differences between the[] offenses are significant. The quantities, methods of distribution, participants, and nature of the transactions—as well as the defendant's role in them—all vary substantially." *Rhine I*, 583 F.3d at 889. Therefore, under the law of the case, Guidelines § 4A1.3 is inapplicable.

This circuit has explained that Guidelines § 5K2.0 may only be applied based upon the "circumstances of the instant offense." *United States v. Gutierrez-*

31

*Hernandez*, 581 F.3d 251, 255 (5th Cir. 2009). Again as described in Section I, in *Rhine I* this court concluded that Rhine's purported involvement in the Fish Bowl scheme is not part of the same course of conduct as the instant offenses, and is also not "part of a common scheme or plan" connected with the instant offenses. *Rhine I*, 583 F.3d at 891. Therefore, again under the law of the case, Guidelines § 5K2.0 is inapplicable.

In its written statement of reasons, but not in its oral pronouncement, the district court also claimed that the departure was justified in light of Guidelines § 5K2.21. However, the third addendum to the pre-sentence report, adopted by the district court as the findings of the court, acknowledged that this provision was inapplicable because "the defendant's uncharged conduct is not part of the instant offense[s]" as required for the Guidelines section to apply. Consistent with this conclusion, this court explained in *United States v. Newsom* that to apply § 5K2.21 there must be "some degree of connection between the uncharged [offense used to support the departure] and [the] charged offense[]." 508 F.3d 731, 735 (5th Cir. 2007). As this court explained in *Rhine I*, the only link between the instant offenses and Rhine's alleged involvement in the Fish Bowl is that both were motivated by "profit from the distribution of crack cocaine," but from sales that were different in degree, with cocaine that was not shown to come from the same supplier and whose distribution involved different co-conspirators. *Rhine I*, 583 F.3d at 886. Therefore, per *Rhine I* and the district court's own findings, § 5K2.21 is inapplicable.

Accordingly, because, in light of this court's prior holdings, not one of the departure provisions relied upon by the district court as an alternative justification for the instant sentence is applicable to the instant case, I conclude that the sentence is not sustainable as a departure.

32

**D.**

Generally, this court will sustain a sentence, even when it is infected with error, if it is established "that the district court would have imposed the same sentence regardless." *United States v. Neal*, 578 F.3d 270, 274 (5th Cir. 2009). However, the district court's three errors in the instant case make this rule inapplicable. (1) The district court committed procedural error by failing to adequately explain its sentence. Because this error prevents meaningful appellate review, it requires the court to vacate and remand for re-sentencing. *Livesay*, 525 F.3d at 1093 n.9. (2) Assuming arguendo that the sentence was procedurally sufficient, based upon the record the sentence was arbitrarily imposed and therefore is substantively unreasonable, requiring this court to vacate and remand for re-sentencing. (3) The district court's alternative justification of its sentence as a departure is insufficient to salvage the sentence, as each of the Guidelines departure provisions on which the district relied is inapplicable. Therefore, I would vacate the sentence and remand for yet another re-sentencing.

Accordingly, I respectfully dissent.