# United States Court of Appeals
# for the Fifth Circuit

---

No. 22-50987

---

United States Court of Appeals
Fifth Circuit

**FILED**

April 25, 2024

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

THOMAS SCOTT PERKINS,

*Defendant—Appellant*.

---

Appeal from the United States District Court
for the Western District of Texas
USDC No. 4:20-CR-388-1

---

Before HIGGINBOTHAM, SMITH, and HIGGINSON, *Circuit Judges*.
JERRY E. SMITH, *Circuit Judge*:

Thomas Perkins was convicted of one count of distributing child pornography in violation of 18 U.S.C. § 2252A(a)(2) and eight counts of possessing devices containing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). Perkins has undeniable mental issues, but the district court determined him competent to stand trial. He was convicted and sentenced to more than 157 years—a substantial upward variance from the guideline range.

Perkins appeals, challenging (1) the competency determination and

(2) the procedural and substantive reasonableness of his sentence. We affirm the conviction but vacate the sentence.

I.

In 2019, agents detected suspicious activity from an IP address associated with a house in Fort Stockton, Texas, occupied by Perkins and his parents. Agents conducted a consensual interview with Perkins's father at his place of work. With the consent of the agents, Perkins's father called his wife, told her to come to his office, and instructed her to leave the front door of their house unlocked. When agents arrived to search the house, they recovered a large cache of child pornography belonging to Perkins. Fortunately, the way that we resolve this appeal does not require us to describe further the content of Perkins's collection nor his attitude toward, or alleged sexual activity with, children.

Perkins was initially charged in a two-count indictment with possession and distribution of child pornography. His appointed counsel filed a motion for mental examination, which was granted. Perkins was evaluated by psychologist Dr. Lacie Biber, who was employed at FMC Fort Worth, a Federal Bureau of Prisons ("BOP") facility. During the evaluation, Perkins stated that he had been diagnosed with autism spectrum disorder and schizophrenia as a teenager and was again diagnosed with schizophrenia during his hospitalization in 2020. Biber explained that she declined to give a schizophrenia diagnosis because Perkins did not meet the diagnostic criteria, pointing to an early diagnosis, rather than in his early to mid-twenties; to the absence of hallucinations; and to a lack of marked change in functioning in late adolescence. As for delusions, Biber reported that Perkins's religious beliefs about having two angels to guide him through life "appear to be a literal interpretation of what he learned through his church and that he may attribute thoughts in his head as messages from these angels that help to com-

fort him in difficult times." According to Biber, Perkins was competent, as he was aware of his charges; appeared to have sufficient factual information about, and a rational understanding of, court proceedings; and could "reason through why a defendant would enter a certain defense strategy based on evidence and facts of a case."

After a hearing, the magistrate judge ("M.J.") found Perkins competent. Based on Biber's evaluation, the M.J. determined that Perkins was "not presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."

A few months later, Perkins filed a motion for a second competency hearing. In support, he provided a report from a psychologist retained by the defense, Dr. James Schutte, who noted that Perkins had diagnoses that included bipolar-type schizoaffective disorder and autism and that Perkins reported having delusions as well as tactile, auditory, and visual hallucinations. During the examination, Perkins "indicated that he has two angels who he feels are going to have him suddenly released from jail by influencing the judge or prosecutor in his case, or by causing evidence against him to disappear." According to Schutte, Perkins understood the facts and technical terms relevant to his case but was unable properly to assist in his defense or understand the consequences of the criminal charges because "he feels that he is going be suddenly released from jail by divine intervention." Perkins reported that he had rejected several plea-bargain offers "because he does not want to sentence himself," though he also indicated significant understanding about how plea agreements work. According to Schutte,

> He was able to state that a plea bargain offers a person a lesser sentence than if he or she went to trial, and is offered by the government in order to avoid going to trial. He reported that a

> defendant would take a plea bargain to receive a lesser punishment, and would not take a plea bargain if they do not agree with it, or if they want to take their chances at trial.

Nevertheless, Schutte opined that Perkins's delusions impaired his ability to work with defense counsel and impacted his ability to appreciate his predicament.

The government then moved for another psychological examination. Perkins was evaluated at FMC Fort Worth by BOP psychologist Dr. Samuel Browning, who determined that Perkins met "many of the characteristic criteria associated with [a]utism" and that "such symptoms dominate his clinical picture." Browning opined that Perkins did not have a mental disease that rendered him unable to understand the nature of the charges or the consequences of the proceeding or to assist in his defense. According to Browning, Perkins showed a factual and rational understanding of the legal proceedings, since he was able to discuss the charges and proceedings and deliberate with counsel about his decision to testify. Browning observed nothing indicating overt difficulties regarding Perkins's ability to assist in his defense and that the evaluation suggested that Perkins could make rational decisions and assist counsel.

During that second competency bout, but before the hearing, Perkins was charged in a second superseding indictment with one count of distribution of child pornography in violation of 18 U.S.C. § 2252(a)(2) and eight counts of possessing devices containing child pornography in violation of 18 U.S.C. § 2252(a)(5)(B). The district court held a competency hearing at which Schutte and Browning testified about their respective evaluations. Schutte testified that he had diagnosed Perkins with bipolar-type schizoaffective disorder, which caused hallucinations and delusions rendering him incompetent to stand trial. Schutte acknowledged that he disagreed with the BOP psychologists about whether Perkins had a psychotic condition and

explained that, as a result of the hallucinations and delusions, Perkins believes "that he is actually not in legal jeopardy and that these beings are going to resolve this case for him." Given those irrational beliefs, Schutte opined, Perkins "does not have an ability to understand the consequences and the nature of these proceedings." Schutte did not attribute the hallucinations or delusions to religious beliefs and reasoned that Perkins's beliefs are more extreme and not congruent with the other members of his church and therefore "enter the realm of a psychotic condition, namely schizoaffective disorder."

Browning testified that Perkins was competent to stand trial because he displayed a rational understanding of the charges and the roles of the judge, jury, prosecutor, and defense counsel. Browning spoke to correctional officers and health services staff, who said that Perkins had no discipline difficulties with daily life in jail. As for Perkins's religious beliefs about, *inter alia*, angels, Browning attributed them to autism and literal thinking and explained that Perkins reasons and describes things in rigid and concrete terms that others might describe more abstractly.

On cross-examination, defense counsel read a paragraph from Schutte's report about Perkins's hearing angels who said they would help his case, and Browning agreed that, without further context, Perkins had probably described a delusion or a hallucination. Browning clarified that during his evaluation, Perkins did not appear to be responding to internal stimuli, such as hearing or seeing angels. In Browning's view, Perkins's reluctance to accept a plea agreement was an unwillingness to admit guilt. Both doctors agreed that Perkins was not malingering or exaggerating symptoms.

After the second competency hearing, the district court issued an order finding that Perkins was competent, as he was "not presently suffering from a mental disease or defect rendering him incompetent to the extent that

he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."

The presentence investigation report ("PSR") produced a guideline imprisonment range of 210–40 months. But the sentencing proceedings were a messy affair. At first, though the court sentenced Perkins to "210 months as to each count . . . to run consecutively," it did not appear to think it was imposing an upward variance, noting, "[t]he Court does not depart from the recommended sentence," finding that "the guideline range in this case [was] fair and reasonable," and denying Perkins's motion for a variance. But toward the end of the sentencing hearing, the court abruptly reversed course in response to a clarification by defense counsel:

> [THE COURT]: . . . There's no—[Counselors], with the low end of the guidelines having been imposed, is it necessary for the Court to upwardly vary for that?
>
> [PROSECUTION]: . . . Not from the Government. Thank you, Judge.
>
> THE COURT: [Defense counsel?]
>
> [DEFENSE]: That is an upward variance, Your Honor. Again, under chapter 5, consecutive sentences.
>
> THE COURT: So the Court does vary upward for that purpose from the low end of the guidelines and run consecutively Counts I through IX, each and every count running consecutively . . . .

Ultimately, the court sentenced Perkins to 210 months in prison for each count and ordered them to run consecutively followed by nine concurrent life terms of supervised release. That was indeed an upward variance.

Perkins filed a motion for reconsideration. The court granted that motion, but out-of-time. The court later appeared to recognize its error and quipped, "[I]f the sentencing is what it is, and if we are fortunate enough to

No. 22-50987

have it back again, we'll take it up then." Perkins appeals.

## II.

First, we consider Perkins's challenge to the district court's finding of competency.

## A.

When reviewing a district court's competency determination, our court often splits its analysis into two steps. *First*, we ask about the nature of the defendant's mental illness, *then* we ask whether that illness makes the defendant incompetent. *See Bruce v. Estelle*, 536 F.2d 1051, 1059 (5th Cir. 1976).[1]

The standard of review is best articulated in *United States v. Pervis*:

> Our court reviews a district court's competency determination using a species of clear error review. Our task is to take a hard look at the facts to determine whether the district court's competency finding was clearly arbitrary or unwarranted. Though we are to take a hard look at the record, it is not our task, as an appellate court, to relitigate the battle of the experts.

937 F.3d 546, 554 (5th Cir. 2019) (cleaned up).[2]

_____

[1] The district court did not follow that two-step inquiry here. Though we are inclined to believe that that is not a sufficient reason to throw out the competency determination, Perkins does not even press such an argument. So we make no definitive statement. We do caution district courts to take care to explain their competency determinations and to split their analyses into the two steps as laid out in *Bruce*. *See* 536 F.2d at 1059. Failure to do so hinders appellate review. "This appellate review is disadvantaged because the district court . . . d[id] not disclose the rationale for the [its] conclusion." *Id.* at 1062 (footnote omitted).

[2] The government contends that *Bruce* is wholly inapplicable because of its distinct procedural posture. But, as Perkins points out, *Bruce* itself says otherwise. *See* 536 F.2d at 1058 ("The standard enunciated in *United States v. Makris*, 535 F.2d 899 (5th Cir. 1976),

## B.

"The Constitution does not permit trial of an individual who lacks mental competency." *Indiana v. Edwards*, 554 U.S. 164, 170 (2008) (cleaned up). A defendant is incompetent to stand trial when "presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(d). On the other hand, a defendant is competent if he "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam) (cleaned up). Not all mental illnesses interfere with competency, so "[a] defendant can be both mentally ill and competent to stand trial." *Mays v. Stephens*, 757 F.3d 211, 216 (5th Cir. 2014).

"The Government bears the burden of proving that the defendant is competent." *Pervis*, 937 F.3d at 554 (citation omitted). "In evaluating competency, the district court may consider various sources of evidence, including, but not limited to, its own observations of the defendant's demeanor and behavior; medical testimony; and the observations of other individuals that have interacted with the defendant." *Id.* (cleaned up). We do not "relitigate the battle of the experts." *Id.* at 554.

With respect to the first part of the competency inquiry, we review the district court's findings for "clear error" where the court has incorrectly resolved conflicting diagnoses. *See Bruce*, 536 F.2d at 1060. Where "the overwhelming weight of the medical evidence point[s] to" a condition not

_____

for appellate review is equally applicable to appeals from the district court in habeas proceedings." (cleaned up)).

indicated by the district court, we may reverse its finding. *Id.* at 1062.

As to the latter part, special consideration should generally be given to the opinions of defense counsel. "Although an impaired defendant might be limited in his ability to assist counsel in demonstrating incompetence, the defendant's inability to assist counsel can, in and of itself, constitute probative evidence of incompetence, and defense counsel will often have the best-informed view of the defendant's ability to participate in his defense."[3]

1.

First, we examine the nature of Perkins's deficiencies. Before getting into the meat of the dispute, Perkins convincingly argues (largely based on the timing of his symptoms) that he is not "malingering," *Pervis,* 937 F.3d at 555–58, or "exaggerating his symptoms," *United States v. Simpson*, 645 F.3d 300, 307 (5th Cir. 2011). The government seemingly concedes that point.

The parties also do not dispute that Perkins suffers from autism, though there is some apparent dispute about how significant that autism is. While the government describes it as "mild," Perkins explains that it has led him to struggle to interact with other people; to become unduly frustrated with tasks; and to struggle to adjust to new situations. For example, as a teenager, Perkins would "simply forgo showering" when "there was not

---

[3] *Medina v. California*, 505 U.S. 437, 450 (1992); *see also Drope*, 420 U.S. at 177 n.13 (noting that defense counsel's "expressed doubt . . . is unquestionably a factor which should be considered" (cleaned up)). Based on caselaw from other circuits, Perkins suggests that if the district court failed to consider his attorney's statements, "[t]hat fact alone supports reversal." *See McGregor v. Gibson*, 248 F.3d 946, 959–61 (10th Cir. 2001); *United States v. Mason*, 52 F.3d 1286, 1292 (4th Cir. 1995). Our circuit law forecloses such an extreme view. *See United States v. Porter*, 907 F.3d 374, 381 n.17 (5th Cir. 2018) (indicating it is not *per se* reversible error when a district court fails to consider defense counsel's opinion about competency).

enough to time to complete" his "specific and lengthy shower routine"—even when that led to "hygiene problems."

Though Perkins's autism diagnosis is relevant to both the competency and sentencing disputes, his contested schizophrenia diagnoses dominate the competency dispute. That makes sense. In some circumstances, schizophrenia can compel a conclusion of incompetency. *See Bruce*, 536 F.2d at 1062.

Perkins points to a long history of schizophrenia, including a diagnosis at age fourteen; a prescription of anti-psychotics in his youth; his hospitalization for many mental illnesses in his late twenties;[4] and his 2021 schizophrenia diagnosis from Schutte. Perkins also observes that the definition of schizophrenia encompasses several of his apparent symptoms, including his various auditory and tactile hallucinations, delusions, and complications such as suicidal ideation.

The government principally relies on the testimony of Browning and Biber, both of whom disagreed with Perkins's schizophrenia diagnoses. The defense relies largely on Schutte and the testimony of Perkins's attorneys. We address each in turn.[5]

*Dr. Biber.* As a threshold matter, Perkins obliquely asserts that we should not consider Biber's opinion at all. Perkins first objects that the government did not call Biber as a witness or introduce her evaluation as evidence at the competency hearing. As a result, Perkins urges that he was improperly denied the ability to cross-examine Biber and that her report was never before the district judge. The government responds that both the M.J. and Perkins's own expert relied on Biber's report. Moreover, Perkins did

---

[4] Including another diagnosis of schizophrenia.

[5] Though we leave discussion of the attorneys' testimony principally to the second part of the competency inquiry. *See infra* part II.B.2.

not object to the M.J.'s consideration of Biber's report, nor did he attempt to call Biber as a witness at the competency hearing. Perkins replies that Biber was used by the M.J. "for the 'limited purpose' of an earlier competency hearing before a different judge." He emphasizes that he is not challenging the earlier determination.

We have every justification (and perhaps even an obligation) to consider Biber's diagnosis for several reasons. First, the standard of review for competency determinations obliges us to take "a hard look at the record." *Pervis*, 937 F.3d at 554. A hard look at the record—a record which includes the Biber diagnosis—considers *every part* of the record.

Perkins provides no caselaw to the contrary. His sole case citation to *United States v. Gray*, 421 F.2d 316, 319 (5th Cir. 1970), is inapposite. There, the government opted not to cross-examine any of the experts whose testimony unanimously supported a finding of incompetency. *Id.* at 318. The government later tried to claim that the testimony was insufficient. *Id.* at 319 n.1. The court held that it would "not penalize [the defendant] for a deficiency which was within the prosecution's capacity to remedy." *Id.*

But in the matter at hand, we find the inverse situation. It was Perkins who declined to challenge the Biber diagnosis at his competency hearing, and now he claims that it was insufficient and would have us penalize the government for that decision. *Gray*, if anything, suggests the exact opposite of what Perkins would have us do.

Considering Biber's report strongly militates against characterizing Perkins's illness as schizophrenia. Biber was aware of both of Perkins's schizophrenia diagnoses, spoke with him about his delusions, and appears to have observed him over time in a residential setting. The strongest mark against her report is that it occurred at a different (and earlier) time from the competency hearing being challenged here.

*Dr. Browning.* Browning also concluded that Perkins's earlier schizophrenia diagnoses were incorrect. Browning's report is not, as Perkins suggests, an "outlier opinion." Indeed, Browning forms part of the 2-1 majority we examine here. Perkins's main objection is that Browning did not "explore Perkins's delusional beliefs" or "discuss the details of his delusions." He also notes that Browning was open to the possibility that the angels were delusions.[6] The government, on the other hand, stresses what it perceives as Browning's superior qualifications and his greater opportunity to evaluate Perkins relative to Schutte.

*Dr. Schutte.* Unlike Biber and Browning, Schutte diagnosed Perkins with schizophrenia. He testified that Perkins was hearing the voices of two angels that were going to help him win his case by influencing the judge or by causing evidence to disappear. The government does not attack Schutte's report in depth, recognizing that he came to a "different conclusion." On the other hand, Perkins attempts to elevate Schutte's report over

---

[6] Though this is not as straightforward as Perkins presents. In cross-examination, defense counsel read Browning a passage from Schutte's report describing the "delusions." The following exchange then occurred:

Q: This paragraph here and these facts as described—

A: Uh-huh.

Q: —does that suggest sort of inspiration or does that suggest a more tangible object in the room that might be qualified as a delusion?

A: With no further context, I would say that it sounds probably like a delusion or a hallucination.

Note how Browning couches his answer as being "[w]ith no further context." Tellingly, Browning reviewed the entirety of Schutte's report. With that context, he seems to have come to the opposite conclusion.

No. 22-50987

Browning's.[7]

*Perkins's "delusions."* The symptom at the center of this dispute is Perkins's "delusions." If he had auditory and visual hallucinations of supernatural beings who he firmly believed would "resolve his legal case for him by either influencing the mind of [the judge] or the prosecution or causing evidence to disappear," Perkins's competency might seriously be in doubt.

And Perkins proffers several ways in which what he calls delusions interfered with his ability to participate in the trial including, *inter alia*, believing that he was not in legal jeopardy because he would somehow be delivered, and his resistance to plea agreements. But Perkins hedged the impact of his beliefs in his discussions with Browning:

> When asked about the most likely outcome, he remarked, "Based on the evidence and that side of the logic, I'd be found guilty . . . with my belief in God, I'd gamble that." He was able to articulate a basic understanding of plea bargains, and indicated he would consult with his attorney and his parents to decide whether a plea agreement offer was a good one, though he expressed reluctance to accept a plea offer. He displayed no influence of psychosis and/or self-defeating motivation as it related to his decision-making.

Moreover, the record contains alternative, medically supported explanations for the "delusions." Browning testified that he "look[ed] at [the angels and similar experiences] in the broader context of how he would describe those types of things that might be commonplace. How would

---

[7] The government does point out that "Dr. Schutte assumed that Perkins'[s] alleged schizophrenia and delusions made him per se incompetent." That is puzzling, for the record does not support that proposition. Nor is it particularly relevant, given that we lean on medical experts in only a limited away when applying a particular diagnosis to a competency determination. *See Bruce*, 536 F.2d at 1062.

somebody describe faith and their religion if they were speaking in a very concrete manner because of autism spectrum disorder?" Browning also testified that, during his observation of Perkins, that

> [t]here was no indication that he was ever experiencing any internal stimuli, that he was hearing these angels, that he was seeing things in the room with us, that he was I guess distracted by the fact that he had these delusions and . . . in his discussions of competency-related matters, he was able to offer not only his faith as a reason for making decisions but also some rational explanations and understanding of the legal consequences.

Perkins's own explanation aligns with Browning's characterization. Take the following examples from Schutte's own report:

> [Perkins] indicates that he hears voices, but feels that they are "spiritual voices." He indicated that he always says that he does not experience auditory or visual hallucinations because he does not feel that they are "psychological or psychiatric." He indicated that he has two angels, as does everyone else, and added that he hears these on a continuous basis.

Belief in the power and real-world presence of supernatural beings is not so uncommon.[8] Moreover, this court has previously upheld a district court's explicit determination that "expressions of religious thoughts" were not symptoms of a psychotic disorder rendering a defendant incompetent despite conflicting expert evidence. *See United States v. Wix*, 416 F. App'x 338, 341 (5th Cir. 2011) (per curiam); *see id.* at 341–43.

*The record as a whole.* In sum, the evidence here is too split to characterize Perkins's condition definitively. He may have had diagnoses of schizo-

---

[8] *See, e.g.*, *U.S. Navy Seals 1–26 v. Biden*, 27 F.4th 336, 342 & n.4 (5th Cir. 2022) (per curiam) (characterizing refusal to get a COVID vaccination because of "divine instruction not to receive the vaccine" as a "sincerely held religious belief[]."").

phrenia in the past, but "it is typically unusual for someone to be diagnosed with [s]chizophrenia that early in adolescence." Perkins also lacked the "marked change in functioning" during "late adolescence" characteristic of individuals with that disorder. Two doctors with experience in evaluating competency examined Perkins at the relevant time and concluded he was competent to stand trial. One dissented. Taking a hard look at the whole picture, it's difficult to see the evidence as anything other than a genuinely mixed bag.[9]

2.

We turn to the ultimate inquiry: whether Perkins's mental health rendered him incompetent to stand trial.

The district court found Perkins competent to stand trial. Recall that a defendant is incompetent if he "is presently suffering from a mental disease or defect rendering him . . . unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(d).[10]

Perkins presents several examples of his own attorneys' doubts about his competence, including, *inter alia*, their requests for a competency hearing; assertions that he was incapable of assisting counsel; and Perkins's reli-

---

[9] We stress again the need for the district court to bifurcate its competency inquiry. For this part of the inquiry, we typically apply the ordinary clear-error standard. But since the district court did not make a finding on the nature of Perkins's particular illness, there is nothing to which to apply such a standard. That inconveniences our review. *See supra* note 1.

[10] *See also Dusky*, 362 U.S. at 402 (cleaned up) (holding that a defendant is competent when he "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.").

No. 22-50987

ance on otherworldly beings and resistance to beneficial plea agreements.[11]

But Perkins's own attorneys did not offer an unequivocal declaration of his incompetency. One conceded that Perkins had "a basic understanding of the proceedings." And Perkins himself presented a more cooperative picture to Browning and Biber. The district court's conclusion that Perkins is competent to stand trial was not "clearly arbitrary or unwarranted." *Pervis*, 937 F.3d at 554 (citation omitted).

There are medical experts on both sides of the issue. And a majority of the experts providing testimony favoring the district court's finding. We need not get into the nitty-gritty of whose qualifications are marginally more impressive or whose point of observation allowed for a keener view. We may not "relitigate the battle of the experts." *Id.* We are not charged with making those sorts of calls. We are to review for a finding that is "clearly arbitrary or unwarranted." *United States v. Joseph*, 333 F.3d 587, 589 (5th Cir. 2003).

Whatever Perkins's mental condition, it is not clearly arbitrary or unwarranted to say that it did not impact his ability to participate in his defense in the way that would render him incompetent. Resistance to plea deals, vague assertions that he was reluctant to help the defense, and struggles in communication are quotidian problems in the world of criminal defense. As the government points out, the doctors on both sides agreed that Perkins had some understanding of the proceedings. And the government is quite right that "even assuming [Perkins's experiences] were psychotic delusions, Dr. Schutte never explained how those beliefs rendered Perkins

_____

[11] Perkins suggests that the district court's purported failure to consider defense counsel's opinions "alone supports reversal." But that approach, perhaps adopted in other circuits, is foreclosed by *Porter* in ours. Nonetheless, it is "unquestionably a factor which should be considered." *Drope*, 420 U.S. at 177 n.13. *See supra* note 3.

No. 22-50987

unable [to] understand his proceedings or assist his counsel."[12]

Existing caselaw does not cleanly resolve the inquiry. *Bruce* is the closest case on point, for it provides some color as to how we ought to resolve conflicting diagnoses of schizophrenia. 536 F.2d at 1061. Yet here, unlike in *Bruce*, *id.* at 1061–62, the record does not include more than seven diagnoses during protracted litigation, where the district court sided with the sole outlier. It contains three, and the district court sided with the majority.[13]

Moreover, *Bruce* is but one example that warrants reversal—it does not establish what minimum threshold warrants reversal. Perkins's case is clearly short of that one example. In *Bruce*, "the overwhelming weight of the medical evidence pointed to schizophrenia." *Id.* at 1062. That is not so here.

Since *Bruce* does not end the inquiry, we lean heavily on the appropriate standard of review—a standard that is "a species of clear error review." *Pervis*, 937 F.3d at 554. Where, as here, there is a genuinely mixed bag of evidence from adept witnesses as to the nature and consequence for this case of Perkins's mental illness that does not plainly warrant a determination one way or the other, we should "[d]efer[] to the district court's reasonable assessment of [a] complex record" and affirm. *Id.* at 548.[14]

## III.

We now address the sentence. Because we vacate it for lack of proce-

---

[12] Though again "[a]t this stage, expert testimony is not so important, although the psychiatrist's 'inexpert' opinion can be a factor in the court's independent decision." *Bruce*, 536 F.2d at 1062.

[13] That, of course, excludes the diagnoses from Perkins's youth that are not raised in-depth by either party.

[14] We set aside any question of what might constitute a clearly arbitrary determination. *Cf., e.g.*, *supra* note 1.

No. 22-50987

dural reasonableness, we do not reach its substantive reasonableness.

A.

The parties dispute whether Perkins properly preserved his objection at sentencing. The government avers that he "did not contemporaneously object to the court's explanation of its sentence or request further explanation."

Perkins responds that our caselaw considers preserved errors identified in motions for reconsideration after sentencing hearings.[15] He points to his filing a Rule 35 motion to correct or reconsider his sentence. *See* Fed. R. Crim. P. 35(a). That motion maintained that the court "did not appear to articulate the basis for the substantial variance elevating a Guidelines sentence of roughly 22 years to an effective life sentence."

At oral argument, the government responded to Perkins's reply-brief argument with two new lines of attack: (1) that Perkins's objection was "not something that Rule 35 could have remedied" and (2) that "Rule 35 is not meant to preserve error after the sentencing hearing." Those objections are foreclosed by *Watkins*. *See* 450 F.3d at 185. There, we determined that defendants had properly preserved error where they "first raised their Sixth Amendment claim in a timely [Rule] 35(a) motion, after the district court had orally pronounced the defendants' sentences." *Id.*[16]

---

[15] *See United States v. Watkins*, 450 F.3d 184, 185 (5th Cir. 2006) (per curiam); *see also, e.g.*, *United States v. Hatley*, 717 F. App'x 457 (5th Cir. 2018) (per curiam) ("Although he did not contemporaneously object, Hatley preserved this error by filing a post-sentencing motion for reconsideration.").

[16] *Watkins* in turn referenced *United States v. Burling*, 420 F.3d 745 (8th Cir. 2005), in which an intervening development in the law made the error sufficiently clear, *id.* at 748–49. *See Watkins*, 450 F.3d at 185. But *Burling* worked hard to minimize the distinction between the intervening case and its predecessors. *See* 420 F.3d at 748.

The government tries to distinguish *Watkins* by pointing to *United States v. Henderson*, 646 F.3d 223 (5th Cir. 2011), *rev'd on other grounds*, 568 U.S. 266 (2013). In *Henderson*, we clarified that "*Watkins* does not control" unless "the error [is] clear." *Id.* at 224 (emphasis added). We continued that, for preservation purposes, "a sentencing error is clear under Rule 35(a) only if it is not the result of the exercise of the court's discretion with regard to the application of the sentencing guidelines." *Id.* at 225 (cleaned up). So Rule 35(a) "extends only to those cases in which an obvious error or mistake has occurred in the sentence, that is, errors which would almost certainly result in a remand of the case to the trial court for further action." *Id.* (cleaned up). Consequently, an error is not clear "when there is no binding precedent on a question on which there is a circuit split." *Id.*

Here, the error as to sentencing procedure was egregious and clear. So Rule 35 was an appropriate vehicle to preserve error, and Perkins's objection was "sufficiently specific to alert the district court to the nature of the alleged error and to provide an opportunity for correction." *United States v. Rodriguez-Leos*, 953 F.3d 320, 324 (5th Cir. 2020) (quoting *United States v. Neal*, 578 F.3d 270, 272 (5th Cir. 2009)). Perkins's objection is preserved.

## B.

Perkins attacks the procedural reasonableness of his sentence on the ground that "the court never explained its 137-year variance from the Guidelines range." Therefore, *United States v. Jones*, 75 F.4th 502 (5th Cir. 2023), articulates the appropriate standard of review:

> If the district court committed a significant procedural error, this [c]ourt must remand unless the error was harmless. Significant procedural errors include:
>
> > (1) failing to calculate (or improperly calculating) the applicable Guidelines range; (2) treating the Guidelines as mandatory; (3) failing to consider the 18 U.S.C.

No. 22-50987

§ 3553(a) factors; (4) determining a sentence based on clearly erroneous facts; or (5) *failing . . . adequately [to] explain the chosen sentence*, including an explanation for any deviation from the Guidelines range.[17]

Thus, we review whether the district court failed adequately to explain the chosen sentence. If so, we remand, unless that error was harmless.

Both sides agree that the district court imposed an upward variance. *See United States v. Douglas*, 910 F.3d 804, 808 (5th Cir. 2018). So, the question is whether the court violated its obligation to "explain [its] conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications."[18] That explanation must be sufficient "to allow for meaningful appellate review and to promote the perception of fair sentencing." *Gall*, 552 U.S. at 50.

Our caselaw paints a detailed picture of what that does—and does not—look like. Checking "four supporting § 3553(a) factors" in the "Statement of Reasons" form and explaining that the court "opted . . . for an above-guidelines sentence driven by the § 3553(a) factors" is enough. *United States v. Conlan*, 786 F.3d 380, 394–95 (5th Cir. 2015). So is an explanation that the variance is based on "prior similar drug conduct mentioned in the PSR." *United States v. Rhine*, 637 F.3d 525, 527 (5th Cir. 2011) (cleaned up).[19] So

---

[17] *Jones*, 75 F.4th at 510–11 (citations omitted) (emphasis added); *see United States v. Gomez*, 905 F.3d 347, 351 (5th Cir. 2018).

[18] *Gall*, 552 U.S. at 46; *see* 18 U.S.C. § 3553(c)(2) ("The court, at the time of sentencing, shall state in open court . . . the specific reason for [an upward variance] . . . .").

[19] The government takes a broader proposition in *Rhine* out of context. It contends that we evaluate procedural reasonableness "in light of the proceeding as a whole, including the facts revealed in the PSR." *Rhine*, 637 F.3d at 529. But taking things "in light of the proceedings as a whole" does not absolve the district court of its responsibility to give a specific reason for an upward variance. Indeed, in *Rhine*, the district court specifically referenced the facts in the PSR in justifying its upward departure. *See id.* at 527.

No. 22-50987

too is a statement of reasons that

> explained that the court took into consideration the need to deter future criminal conduct and the need to protect the public, in light of the defendant's history of assaultive and sexually assaultive behavior, and noted that the sentence was based on (1) the nature and circumstances of the offense and history and characteristics of the defendant, (2) the need to adequately deter criminal conduct, and (3) the need to protect the public from further crimes.

*United States v. Fraga*, 704 F.3d 432, 437 (5th Cir. 2013) (cleaned up). Finally, a statement that "the court has considered the arguments made earlier and as well as the information in the report" can be enough, depending on the content of the sentencing record. *United States v. Bonilla*, 524 F.3d 647, 657 (5th Cir. 2008), *overruled on other grounds by United States v. Reyes-Contreras*, 910 F.3d 169 (5th Cir. 2018) (en banc).

On the other hand, "a single passing reference to § 3553(a)" and an indication that the variance was "based upon the government motion for upward departure" do not suffice. *United States v. Chon*, 713 F.3d 812, 823–24 (5th Cir. 2013) (per curiam). Nor does "a bare recitation of the Guideline's calculation" that "does not mention a defendant's arguments." *United States v. Mondragon-Santiago*, 564 F.3d 357, 363 (5th Cir. 2009) (cleaned up). Nor an explanation "based . . . on § 3553(a)(2)(A)" that merely "discussed what [the defendant's] sentence might have been" for a related, but uncharged, crime—and that failed to "address [his] argument regarding the factors under § 3553(a)(1)." *United States v. Bostic*, 970 F.3d 607, 611–12 (5th Cir. 2020) (cleaned up).

The situation here plainly falls into the latter camp. The court initially claimed that it did not "depart from the recommended sentence" but, after clarifying with the defense, said it was "vary[ing] upward . . . from the low

end of the guidelines."[20]  Before that clarification, the court said it took note of the § 3553(a) "sentencing factors . . . in arriving at a reasonable sentence." It proceeded immediately to say that "[it] found the guidelines range in this case to be fair and reasonable."  In its Statement of Reasons, the court checked only one box for its reason for a variance, "Other."  And next to "Other" it wrote "all reasons stated in open court."

The government marshals two lines of defense to Perkins's claim. First, it gives an exhaustive list of what the district court *did* do:

> The court informed the parties that it had the discretion to run the sentences for Perkins' child-pornography counts concurrently or consecutively.  It read Perkins' pleadings, listened to his extensive arguments for a sentence below the guidelines range, and asked the government to address one of those arguments.  The court then expressly denied Perkins' motion for downward variance, finding it was not justified by the sentencing factors in § 3553.

Assume *arguendo* that all of that is true.  It is still insufficient.  Crucially absent is the one failing that Perkins points out here: an explanation with specific reasons why an upward variance was justified.

Second, the government reiterates its reasoning from its motion for an upward variance, the § 3553(a) factors, and the reasons stated at sentencing. But that motion was not even characterized as one for an above-guideline sentence.  And the government admits that "the sentencing transcript . . . does not contain specific fact findings for running the sentences consecutively."  The government's *post-hoc* rationalization of the variance is foreclosed by the text of § 3553(c)(2), which provides that "*[t]he court*, at the time

---

[20] Of course, the district court did in fact impose an upward variance beyond the guideline range of 210–40 months.  *See Douglas*, 910 F.3d at 808.

of sentencing, shall state in open court . . . the specific reason for [an upward variance] . . . ." (emphasis added). The court neither adopted the government's reasons[21] nor stated any independent reasons in open court. All it did was reference § 3553 in passing. That is not enough. *Chon*, 713 F.3d at 824.

The government's best case in response is *Bonilla*, 524 F.3d at 657. There, our court found a statement that "the court has considered the arguments made earlier and as well as the information in the report" to be an adequate explanation. *Id.* But *Bonilla* is inapposite for two reasons.

*First*, though in this case the court did review and adopt the PSR, that report did not recommend a variance. In fact, it quite explicitly indicated that it "had not identified any factors that would warrant a departure from the applicable sentencing guidelines range." So, the PSR cannot provide the reasons that we seek. And there is no such reference to any "arguments made earlier" justifying the imposition of a variance. By contrast, the district court in *Bonilla* referenced both the report and the "arguments made earlier" "[i]mmediately before imposing [the] sentence." *Id.*

The district court did not even appear to think it was imposing an upward variance until the very end of the hearing when defense counsel clarified. At first the court ruled that it "d[id] not depart from the recommended sentence," found that "the guideline range in this case [was] fair and reasonable," and denied Perkins's motion for a downward variance.[22] Then,

---

[21] Even if the district court did reference the government's reasoning, that alone is not always enough to provide an adequate explanation. *See Chon*, 713 F.3d at 824 ("Considering the district court's single passing reference to the § 3553(a) factors and lack of any explanation for the upward departure, *besides the indication on the statement of reasons that it was based on the government's motion for an upward departure*, the district court committed procedural error." (emphasis added) (citation omitted)).

[22] The district court docket also notes that the court did formally grant a motion as

only a few pages later, it shifted gears dramatically:

> [THE COURT]: . . . There's no—[Counselors], with the low end of the guidelines having been imposed, is it necessary for the Court to upwardly vary for that?
>
> [PROSECUTION]: . . . Not from the Government. Thank you, Judge.
>
> THE COURT: [Defense counsel?]
>
> [DEFENSE]: That is an upward variance, Your Honor. Again, under chapter 5, consecutive sentences.
>
> THE COURT: So the Court does vary upward for that purpose from the low end of the guidelines and run consecutively Counts I through IX, each and every count running consecutively. . . .

The court did not expressly reference detailed material to justify its actions as in *Bonilla*. It may have been somewhat uncertain as to what its actions were.

Second, even absent those distinctions, *Bonilla* would not control. *Bonilla* noted that the reasons provided were "minimally sufficient" in the context of a 41-month non-guidelines sentence. 524 F.3d at 657. The magnitude of the sentence impacts what counts as an adequate explanation.[23] Therefore, we hesitate to say that what is minimally sufficient for a 41-month

---

to a variance. But the mere act of granting a variance does not equate to adoption of the government's position in full. Nor does it serve as an adequate explanation itself. That would obviate the need ever to provide an independent explanation.

[23] *See Gall*, 552 U.S. at 50 ("We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one."); *United States v. Smith*, 440 F.3d 704, 707 (5th Cir. 2006) ("The farther a sentence varies from the applicable Guideline sentence, the more compelling the justification based on factors in section 3553(a) must be.").

sentence is also sufficient for a 137-year sentence. What is good for the goose, is good for the gander—but not necessarily a pterodactyl.[24]

The government also cites *Conlan* and *Rhine*. As noted above, those are readily distinct. The court in *Conlan* at least checked several § 3553 factors on its statement of reasons. 786 F.3d at 394–95. Here, there was none. And the court in *Rhine* articulated a far more extensive explanation of its reasoning than the one given here. Not to mention the variance in those cases was far less than what we have at hand now.[25]

We do not consider the court's granting Perkins's motion for reconsideration, where it noted that it was "considering an upward departure because of the nature, circumstances, and seriousness of [his] offense." That order seems to have been out-of-time, so the court likely lacked jurisdiction to issue it. *See McClure v. Ashcroft*, 335 F.3d 404, 413 (5th Cir. 2003) (explaining when a district court can modify a sentence). Moreover, an order granting Perkins's motion—issued well after the sentence and indicating only a leaning to depart upward—can hardly be construed as a sufficient

---

[24] The government also cites *United States v. Key*, 599 F.3d 469 (5th Cir. 2010), which is an application of *Bonilla*, in which the court "explicitly adopted" the "government's sentencing argument." *Key*, 599 F.3d at 474. *Key* is distinct from this case for the same reasons as *Bonilla*. Though the sentence in *Key* was greater than *Bonilla*, it is still nearly an order of magnitude smaller than the one here and substantially less of a departure from the guidelines (both proportionally and absolutely). *See id.* at 471–72 (noting a 46-to-57-month guideline range and a 216-month sentence).

[25] Perkins also notes that *Conlan*, *Rhine*, and *Fraga* involved much smaller upward variances. That's right. Compared to the 1,650-month upward variance here, variances of 9 months, *Fraga*, 704 F.3d at 437, 147 months, *Rhine*, 637 F.3d at 535, and less than 96 months, *Conlan*, 786 F.3d at 394, are trivial. As noted above, the extent of the variance has meaningful implications for what constitutes an adequate explanation. *See supra* note 23 and accompanying text.

No. 22-50987

justification for the court's original sentence.[26]

\*    \*    \*    \*    \*

Thus, the district court erred, conscientiously realized that error, and now expects that the case will come back after this appeal.[27] We AFFIRM Perkins's conviction, VACATE his sentence, and REMAND for resentencing. We express no view on the sentence that the district court should announce on remand.

_____

[26] *Cf.* 18 U.S.C. § 3553(c)(2) ("The court, *at the time of sentencing*, shall state in open court . . . the specific reason for [an upward variance] . . . ." (emphasis added)).

[27] "[I]f the sentencing is what it is, and if we are fortunate enough to have it back again, we'll take it up then."